In the Matter of Stephen BROADY and Kathryn Lanell Broady, Debtors.

Hugh A. MINER, trustee, Petitioner,

v.

STEHLIK & ASSOCIATES, Respondents.

Bankruptcy No. 87–05422–SJ.

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

Aug. 23, 1988.

Hugh A. Miner, St. Joseph, Mo., pro se.

Frederick D. Stehlik, Stehlik & Associates, Omaha, Neb., for respondents.

ORDER APPROVING RESPONDENTS' ATTORNEYS' FEE IN THE SUM OF $2992.00 and REIMBURSEMENT OF EXPENSES OF $33.01 AND DIRECTING RETURN OF DIFFERENCE BETWEEN THOSE FIGURES AND $5500 TO THE TRUSTEE IN BANKRUPTCY WITHIN 20 DAYS

DENNIS J. STEWART, Chief Judge.

This is a matter in which the trustee in bankruptcy seeks, pursuant to Bankruptcy Rule 2017, to compel the respondents to restore all or part of a $5,000 attorney's fee to the bankruptcy estate. The files and records in this case show that the debtors, in their statements of affairs filed with the court on January 4, 1988, stated that they had paid, within the year next preceding bankruptcy, a $5,000 "retainer," to John Fitzgerald and that the "last billing indicated approximately $3,100 remaining." On January 28, 1988, accordingly, this court, at the instance of the trustee in bankruptcy, issued its order to the effect that respondents show cause in writing why some or all of the $5,000 fee should not be "remitted to the trustee in bankruptcy."

In their response to that order, the respondents supplied a statement of services purporting to have commenced on September 2, 1987, with a conference with the debtor Stephen Broady "re lease and financial restructure and chapter 12 alternatives." In general summary of the services rendered thereafter, the respondents stated:

"The consultations and legal services from that point forward in 1987 revolved about contesting the lease termination and preparation of appropriate documentation, the voluntarily negotiated restructure of the Broadys farm indebtedness, including preserving the land leases for approximately 450 acres in Nebraska and 600 acres in Missouri, the accounting for farm machinery and livestock (cow-calf) production facilities, determination of ownership of assets, determination of indebtedness liability with a family Co-Debtor, principal secured indebtedness negotiations with Production Credit Association (PCA), and the structure of alternatives with the Broadys through analysis of alternatives inclusive of State Court litigation for land lease injunctive relief, declaratory relief on co-debtor liability, voluntary restructure of indebtedness owed to each creditor, consideration of Deed/Transfer in lieu of foreclose and complete and detailed financial analysis of Chapter 11, Chapter 12, and Chapter 7 proceedings.

\*       \*       \*       \*       \*       \*

"The fee of $5,000.00 was requested of the Broadys in September, 1987 for the current work being performed and the projected cost of analyzing and negotiating a voluntary indebtedness restructure for the Broadys which required a significant dedication by this office of time and personnel. At the time of the fee request and payment, Bankruptcy filing was not intended and was to be the last alternative pursued according to the specific directions of the Broadys."

On February 18, 1988, this court issued its written order setting a hearing for March 18, 1988, on the issues thereby joined. The respondents did not appear for that hearing, with the result that, on March 23, 1988, this court issued its order directing the respondents to turn the sum of $5,000 over to the trustee in bankruptcy. On April 4, 1988, however, respondents moved for reconsideration of that order, complaining that they had not received any notice of the March 18, 1988, hearing. The court therefore set another hearing on the issues joined by the pleadings for May 20, 1988, in St. Joseph, Missouri. At that time, representatives of the respondent appeared to reiterate their position that the services which were rendered in return for the entire $5,000 "retainer" were not rendered in contemplation of bankruptcy and that, otherwise, they relied upon the detailed statement previously submitted.

■ According to the files and records in this case, however, as mentioned above, $3100 of the $5000 fee was not yet paid as of the date of bankruptcy, January 4, 1988. Thus, it is certain that the bankruptcy court may determine the reasonableness of those payments under the provisions of Bankruptcy Rule 2017(b), which provides that:

"On motion by the debtor or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after the commencement of a case under the Code is excessive, whether the payment or transfer is made or to be made directly or indirectly, if the pay-

ment, transfer, or agreement therefor is for services in any way related to the case."

With respect to the other services, which were compensated by the $1900 paid before bankruptcy, the question is whether the services were rendered "in contemplation of the filing of a petition under the Code by or against the debtor" within the meaning of Bankruptcy Rule 2017(a). According to 8 Collier on Bankruptcy para. 2017.06, p. 2017–8 (15th ed. 1988),

"(t)he best test is whether the ensuing bankruptcy is reasonably predictable at the time the payment or transfer to the attorney is made. Where a payment was followed within a week by adoption of an out of court liquidating plan and within a month by an involuntary bankruptcy petition, the payment was found to have been in contemplation of bankruptcy. Likewise, an attorney who received a payment at a time when the debtor's business was at a standstill and who worked on a possible assignment for the benefit of creditors came within the rule."

In this case, the detailed statement which applicant counsel have submitted to support their contentions shows that, as early as September 16, 1987, the debtors and counsel were having "Chapter 12 discussions" after they had had discussions about "Chapter 12 alternatives" at the very first meeting between them on September 2, 1987. Further, on September 14, 1987, they discussed "Chapter 12 necessity," and much of the early activity was concerned with working on a "plan for indebtedness restructure." Other than their conclusionary statements to the contrary in the hearing of May 20, 1988, the applicants did not offer any evidence to contradict their own detailed statements to the above effect. This court therefore finds that the services—and corresponding payments—were rendered and made in "contemplation of bankruptcy" within the meaning of Bankruptcy Rule 2017(a), *supra*.

■ It is therefore initially incumbent upon the court to determine the "lodestar" amount of attorney's fees. According to

the current of authority in this district, this should be determined by simply acceding to the applicant's characterization of the number of hours which he has worked and multiplying it by the hourly rate asserted by him. In this case, counsel state that they have rendered 54.40 hours of services, which, according to their hourly rate, merit total compensation in the sum of $4,080.00. They have also incurred $33.01 in expenses, for which they seek reimbursement. Thus, the total "lodestar" award of fees and expenses is $4,113.01. Counsel further state that the debtors made payments to them totaling $5,500.00—a $500 payment on September 4, 1987, and a $5,000 payment on September 24, 1987. Accordingly a "credit balance" of $1,386.99 exists in favor of the debtors.

■ It is next incumbent upon the court to determine whether the "lodestar" award should be enhanced or decreased according to relevant factors. "Once the nature and extent of the services rendered have been determined, the bankruptcy judge must assess the value of those services." *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1300 (1st Cir.1977). An "additional factor the ... court must consider is the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled." *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.,* 487 F.2d 161, 168 (3d Cir.1973). "The tangible benefit conferred on the estate and its creditors is clearly a proper measure of the appropriate compensation.... It has also been suggested that when the benefit conferred on the estate is particularly great, the court should award a 'premium' or 'lodestar enhancement principle' in addition to compensation at customary hourly rates. Conversely, where the quality of the services rendered is poor or the size of the estate is insufficient to satisfy the claims of creditors, allowances of compensation should be accordingly reduced." 2 Collier on Bankruptcy para. 330.05, pp. 330–38, 330–39, 330–40 (15th ed. 1988). In this case, the fact of the filing of a straight liquidation proceeding demonstrates that the prebank-

ruptcy "debt restructuring" services provided by the applicant law firm were largely unavailing and unsuccessful. Although the applicant law firm was granted an explicit evidentiary opportunity on this issue, they have not adduced any evidence of any signal benefit which has been conferred on the debtors or upon the estate as a result of the services which they performed. Consequently, this court concludes that the award should be reduced, rather than enhanced.

In determining the extent to which the award should be reduced, the court must consider the factors which have been set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). Those considerations are contained in the following paragraphs:

(1) *The time and labor required.* "The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." 488 F.2d at 717. As is observed above, the applicants claim to have spent some 54.40 hours in exploring nonbankruptcy possibilities as a prelude to the bankruptcy process. They claim a total award of services rendered of $4,080. The average hourly rate is thus $75.00 per hour. Because of the apparent lack of success in the prebankruptcy processes, it was necessary for the debtors to retain other counsel and inaugurate the bankruptcy process. It must further be observed that much of the attempted prebankruptcy "restructuring" would have depended upon the voluntary cooperation of the debtors' creditors, and it was, or should have been, readily apparent that at least some of the creditors—namely, Mr. Broady's parents—did not have a cooperative attitude. When these activities seem to have been bound to fail, they should have been kept at a minimum. Accordingly, the court concludes that it is fair—and liberal toward the applicant law firm—to reduce the hourly rate to $55.00 per hour so as to ensure against overpaying them for services which were not productive. And, as above stated, this court believes

that this subtraction, if it errs, errs in favor of treating the applicant law firm liberally. Thus, the appropriate award for their services is $2,992.00.

(2) *The novelty and difficulty of the questions.* From the evidence which has been presented by the applicant law firm, the court is unable to determine whether any legal questions were dealt with at all. The process appears to have been one of simply considering alternatives, with a minimum of productive legal work being performed.

(3) *The skill requisite to perform the legal service properly.* Again, this factor is difficult to assess in view of the fact that the services which were rendered were, according to the evidence before the court, unproductive. Further, it appears that at least some of the alternatives considered, in view of the intransigence of at least some of the creditors, were not possible in the first instance.

(4) *The preclusion of other employment by the attorney due to acceptance of the case.* Without evidence, the court can perhaps take judicial notice that at least some other type of activity was precluded by virtue of the applicant law firm's work on this case. But this factor cannot overshadow the overwhelming importance of those mentioned above.

(5) *The customary fee.* The only benefit which was received by the debtors was a potential discharge in bankruptcy. The creditors received no visible benefit from the efforts of applicant counsel. The $55 per hour which is being awarded compares favorably with the $600 guideline ordinarily awarded to debtors' counsel in chapter 7 cases in which the only benefit conferred is the granting of a discharge to the debtors.

(6) *Whether the fee is fixed or contingent.* According to the evidence before the court, no contingent fee was involved in this case.

(7) *Time limitations imposed by the client or the circumstances.* There is no evidence of any special time limitations which may have required counsel to drop everything and work on this case to the exclusion of others. The work took place during a four-month period prior to the filing of the bankruptcy.

(8) *The amount involved and the results obtained.* As mentioned above, the evidence does not demonstrate the conferring of any tangible benefit.

(9) *The experience, reputation, and ability of the attorneys.* The applicants have not presented any particularized evidence in this regard. In computing the "lodestar" award, as mentioned above, the court has accepted the applicants' hourly rates.

(10) *The "undesirability" of the case.* The evidence does not indicate any "undesirability" of such a nature that it would warrant a higher award.

(11) *The nature and length of the professional relationship with the client.* From the facts which have been presented, this factor does not appear to have an essential bearing on this case.

(12) *Awards in similar cases.* As observed above, the amount being awarded in this case compares favorably with awards in other cases in which similar results are achieved.

For the foregoing reasons, it is hereby

ORDERED that the attorney's fees of Stehlik and Associates be, and they are hereby, approved to the extent of $2,992.00 in compensation and $33.01 in expenses. Accordingly, it is further

ORDERED that, within 20 days of the date of the filing of this order, the law firm of Stehlik and Associates turn over to the trustee in bankruptcy, Hugh A. Miner, the difference between $5,500 and the sum of $3,025.01.