In re AIR FREIGHT
CENTRAL, Debtor.

**Appeal of Joel PELOFSKY, Esq.**

**No. 88-0649-CV-W-6.**

United States District Court,
W.D. Missouri, W.D.

Dec. 28, 1988.

Joel Pelofsky, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for appellant.

MEMORANDUM AND ORDER

SACHS, District Judge.

This is an appeal from an allegedly inadequate allowance of attorneys' fees in a Chapter 11 bankruptcy case. Counsel sought $8,143 in fees and $1,870.80 in expenses; the award was for $6,559.80. Motion for reconsideration was denied and this appeal followed. The amounts involved are comparatively modest, but apparently matters of principle are presented.

The award was made under a formula devised by Chief Bankruptcy Judge Stewart, adopting a schedule of rates for attorneys based on years of bankruptcy experience and categories of legal work. The top rate for trial work of attorneys with 10 years or more such experience was $115 per hour; the lowest rate for miscellaneous legal work of attorneys with less than 5 years of bankruptcy experience was $45 per hour. The court understands that three basic objections are made: (1) the formula fails to take into account particularized skills and experience of attorneys, but makes awards turn simply on longevity in bankruptcy practice (treated as an undifferentiated body of work); (2) the rates chosen appear to be substandard, according to examples supplied for judicial notice; and (3) standardized discounts for categories of out-of-court time such as conferences are not authorized.

Analysis has been somewhat impeded by the lack of opposition, both at the bankruptcy court level and in this court. Apparently this has been a successful reorganization, with all parties including creditors satisfied with the outcome and nonresistant as far as paying counsel is concerned. The

bankruptcy court has an independent responsibility, however, to be exercised with some care, to see that the system is not abused. *Matter of Davison,* 79 B.R. 859, 860 (Bkrtcy W.D.Mo.1987).[1]

Appellant attaches exhibits to his brief tending to show that during the past two years hourly rates of up to $175 have been requested in bankruptcy in this district and rates up to $160 have been approved. The lead applicant here, an experienced former bankruptcy judge, seeks $125–150 per hour for various chronological segments of time. Using the formula stated in his ruling, Judge Stewart considerably discounted the claim, without considering any special skills, experience, or criticism of the applicant's performance.

■ The court is doubtful that it can take judicial notice of other bankruptcy case files, and particularly doubts that a superficial impression devoid of context would allow independent evaluation here. Judicial notice is taken however of fee inflation generally and of a recent school desegregation case in which a lawyer's standard rate "at the higher end of a range of $125 to $175 per hour" was noted, and $200 was awarded and affirmed on appeal. *Jenkins by Agyei v. State of Missouri,* 838 F.2d 260, 263 (8th Cir.1988) (*cert. granted* to consider in part whether the $200 hourly allowance contained an impermissible interest factor, *Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 218, 102 L.Ed.2d 209 (1988)). While the Kansas City School District litigation doubtless has challenging aspects not present here, that distinction points up the questionable nature of treating all legal work or all bankruptcy work as fungible, from presumably routine work on schedules to imaginative handling of sophisticated issues that may arise in various contexts. It also seems questionable that rates allowed in a disastrous Chapter 7

situation where all parties are serious losers should be used when the outcome is successful, and a business is not only preserved but established on a course that may be highly profitable. Some might think the rewards in successful bankruptcy cases might rival those in a personal injury case triumph or corporate litigation that may be extremely rewarding to counsel as well as the client.[2]

■ This court understands the appeal of a formula using a standard ceiling rate, as in the Criminal Justice Act and other legislation, particularly in that it avoids setting a price on the time of individuals frequently before the court. As recognized in *Davison, supra,* even without evidence, however, a judge in bankruptcy cases and others is expected to exercise knowledge as to "'the quality of legal work presented to him by *particular* attorneys'" (79 B.R. at 860—emphasis supplied); and *Jenkins* confirms that judges must also take into account the reputations and appraised ability of individual fee applicants (838 F.2d at 263). The formula stated in the ruling complained of seems to have no basis in precedent and appears to violate the duty of making individualized appraisals.

Appellant further objects to the formula establishing a premium on court time and various discounts for other categories of work. It seems true that conferences and negotiations may prove most valuable in one case and trial tactics may prove most valuable in another. Skillful legal research may be the most productive aspect of legal work in some contexts. It is proper to make adjustments for differences in productivity of various activities. *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3rd Cir.1973). I doubt that this authorizes standardized *categories* of fees

---

1. The contrary implication of one sentence in *Matter of Broady,* 92 B.R. 389 (Bkrtcy W.D.Mo. 1988), to the effect that a judge in this district must accept time and rate information supplied by the applicant (92 B.R. at 392) has no support to my knowledge. Judges doubtless generally accept the good faith of representations by most attorneys, however.

2. The court is mindful that good and bad results may flow from economic factors beyond counsel's control and should not be automatically attributed to counsel. At the same time, ability to pay without undue pain is a test frequently used in billing and to some extent in fee-setting. If lack of success authorizes a discount (*Broady, supra* ), a successful outcome deserves adequate compensation, measured by realistic concepts of the world as it is.

(absent legislative direction as in the Criminal Justice Act) but rather means that individualized appraisal of segments of work in particular cases is proper. The court is not bound to use a fixed fee for all of an attorney's work. *Lindy* thus seems to authorize even greater individualization than may be usual in a law office but does not seem to permit a standard premium for sitting at counsel table in a court room, or even for talking time.

This case thus requires a remand for reconsideration free of the announced formula.[3] Flexibility is required, even though this may bring idiosyncratic results.

A remand will permit further evidence, if desired, and further development of the reasonableness of the tax work, for example, if deemed a productive issue to pursue. Recognizing the expertise of the bankruptcy court, and possible special problems in bankruptcy, no further direction seems appropriate.

Reversed and remanded.

---

**3.** It may be argued here that the formula was only the first step in analysis. The record on appeal does not reproduce a footnote that could be pertinent. It seems clear, however, that the formula was the result of a serious and well-intended effort to bring uniformity out of perceived chaos and the defect in the approach necessarily taints the conclusion.