**In re Clinton E. WILLIAMS and wife, Billie Ray Williams, Debtors.**

**Bankruptcy No. 288–20279–12.**

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

March 16, 1989.

---

Walter O'Cheskey, Lubbock, Tex., Chapter 12 Trustee.

Arthur Glover, Amarillo, Tex., for debtors.

Underwood, Wilson, Berry, Stein & Johnson, Amarillo, Tex., for APCA.

## MEMORANDUM OF OPINION CONCERNING ATTORNEY'S FEES

JOHN C. AKARD, Bankruptcy Judge.

On May 16, 1988, Clinton E. Williams and wife, Billie Ray Williams (Debtors) filed for relief under Chapter 12 of the Bankruptcy Code. After protracted negotiation and litigation on February 8, 1989, the Court confirmed the Debtors' Third Amended Plan of Reorganization. The Court took under advisement the requests for attorney's fees made by the Debtors' attorney and the attorneys for Amarillo Production Credit Association (APCA).

### Facts

On December 6, 1988, APCA's attorneys filed an application for fees and expenses in the amount of $20,974.90 representing services rendered between May 13, 1988 and November 20, 1988 (APCA Application). On February 8, 1989, APCA filed a supplemental application requesting additional attorney's fees of $5,828.01, appraiser's fees and expenses of $1,243.00, and credit life expense of $896.25.

Various notes executed by Mr. Williams to APCA were attached to the APCA Application. In Paragraph 11(d) the notes contain an agreement by the borrower:

> that if this Note is placed in the hands of an attorney for collection or to protect or enforce any of the Association's rights hereunder, their liability to the Association shall extend to and include, to the extent permitted by applicable federal or state law, reasonable attorney's fees not to be less than 20% of the sum of unpaid principal, compounded interest, and accrued interest, together with all court costs and all other fees, costs and expenses paid or incurred by the Association in connection with the collection of this loan.

The Notes were secured by a deed of trust signed by Mr. and Mrs. Williams on February 10, 1988 which described the notes as "providing for the payment of attorney's or collection fees." Apparently there were prior deeds of trust and numerous security agreements.

On December 19, 1988, the Debtors' objected to the APCA Application asserting that the APCA used three separate attorneys at rates varying from $100.00 to $165.00 per hour; that attorney Jerry N. Smith charged for 16.25 hours of conferences with attorney Patrick Mosley, 10.15

hours of conferences with the president of APCA, and 1.7 hours of conferences with unidentified persons; that attorney Patrick B. Mosley charged for 10.2 hours of conferences with Jerry N. Smith, 13.55 hours of conferences with the APCA President and 13.55 hours of conferences with unidentified persons, and that at all meetings and hearings, the APCA was represented by at least two attorneys. On February 14, 1989, the Debtors filed an objection to the supplemental application asserting duplication of effort, lack of benefit to this estate, and preparation for matters not at issue.

On February 8, 1989, the Debtor's attorney filed an application for attorney's fees in the amount of $15,617.50 and expenses of $310.87 against which should be credited the $1,500.00 retainer which he received. The Debtors' attorney did not attempt to itemize the date and services rendered, but noted the amount of time spent on the case each week. He stated that he reduced his fees to $40.00 per hour because the Debtors were farmers.

### DISCUSSION

There is no question but that this Chapter 12 proceeding was long and hotly contested. The file indicates that APCA did everything in its power to oppose the Debtors' reorganization until the Debtor paid APCA in excess of $200,000.00 from the sale of cattle. At a hearing in December, 1988, the Court ruled against APCA on its proposed method of interest calculation. Following resolution of those matters, the Trustee was able to get the parties to agree on a plan of reorganization with the question of attorney's fees submitted to the Court.

■ Section 506 of the Bankruptcy Code[1] provides that if the value of the collateral exceeds the amount of the debt, the secured creditor is allowed interest and "any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." *United States v. Ron*

*Pair Enterprises, Inc. (In re Ron Pair Enterprises, Inc.)*, —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Thus, APCA is entitled to reasonable fees, costs and charges if the value of its collateral exceeds the amount of its claim. It is not entitled to the contractual 20% attorney's fees unless it can show that those fees are reasonable.

It is rare for creditors to be entitled to attorney's fees or costs in a Chapter 12 proceeding because, in most instances, the amount of the debt exceeds the amount of the collateral. Indeed, that would be the situation in this case if the Debtors had agreed to the land values determined by APCA's appraiser. The Debtors, however, felt that the land had a greater value and stipulated that APCA is fully secured.

■ The Debtors did not contest the fees APCA requested for its appraiser nor the credit life insurance charges.[2] The question then is: What are reasonable attorney's fees for APCA's representation in this proceeding? This appears to be the first Chapter 12 case in which the APCA has been involved. The first case is always a learning process for a creditor. This fact is evidenced by the large amount of time the attorneys spent in conference with the officers of APCA. Certainly APCA is entitled to have as many attorneys as it wishes working on a case, but the Debtor is only obligated to pay for reasonable services. It appears to the Court that this matter could easily have been handled by one attorney. Certainly, it was only necessary to have one attorney present at hearings, depositions and conferences. APCA should not be permitted to "run up" the attorney's fees in an attempt to penalize the Debtor. APCA's use of one attorney would have eliminated the necessity of the large number of very expensive office conferences. This case may have been a learning process for the attorneys as well. Regardless, the Debtors should not pay for APCA's edu-

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

**2.** The Court does not have sufficient information upon which to make a determination that these charges should be allowed, but will allow them since the Debtors did not oppose them.

cation. Understandably, APCA directed its attorneys to prepare for, and litigate, issues which it felt were in its best interest. However, those issues were decided adversely to APCA and the Debtors cannot be expected to pay for those services.

The Debtors made substantial sacrifices in order to make this Chapter 12 plan work. They paid over $200,000.00 to APCA which the Court had permitted them to use in expanding their cattle business but which, based on market conditions, they felt it prudent not to expand. They surrendered their stock in APCA, surrendered equipment valued at $40,000.00 to APCA and surrendered 480 acres of land valued at $171,000.00 to APCA. The result is their obligation to APCA is reduced to approximately $100,000.00. They also surrendered collateral to the Commodity Credit Corporation. These efforts indicate that the Debtors are honest and sincere in their efforts to make and carry out an effective Chapter 12 Plan.

This case is not difficult or unusual. There were no competing lien claims and no dischargeability issues. The only issues litigated were the disposition of the APCA stock, the amount of interest due to APCA (issues raised by APCA) and the value and division of the Debtors' real property. It is significant that the Small Business Administration, which has a second lien on the property to be retained by the Debtors, acknowledged that its debt is unsecured.

The purpose of Chapter 12 is to rehabilitate family farmers in order to keep them on the farm. Allowing large and unnecessary attorney's fees for the debtors' attorney and for creditors' attorneys would stifle this process and make reorganization impossible.

Considering all of these factors, this Court finds that the sum of $10,000.00 would be a reasonable fee to charge the Debtors in this proceeding for the services of APCA's attorneys.

Mrs. Williams did not sign the prepetition notes to APCA and, thus, has no personal liability to APCA. She pledged her interest in the real estate. As a consequence, post-confirmation documents shall be drawn so that her interest in the real estate stands as security for the debt, but she shall have no personal liability to APCA.

The Debtors' attorney has worked long and hard on this case. He reduced his hourly rate to $40.00 per hour, but even at that reduced rate his attorney's fee request is for over $15,000.00. This Court customarily sees attorney's fee requests in Chapter 12 cases between $4,000.00 and $7,500.00. Undoubtedly the opposition offered by APCA resulted in substantial additional attorney's time, but it also appears that this case was a learning process for the Debtors' attorney. The Debtors should not be required to pay for the education of their attorney any more than they should be required to pay for the education of the officers and attorneys of APCA. The Debtors' attorney is entitled to reasonable compensation for actual and necessary services rendered pursuant to § 330. In this case, the Court finds that $10,000.00 (in addition to the $1,500.00 retainer) is a reasonable fee for the Debtor's attorney. The Court allows in full the expenses requested by the Debtor's attorney.

ORDER ACCORDINGLY.[3]

---

**3.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.