**In re ROBERTSON COMPANIES, INC., d/b/a Robertson Lumber Company, Noeske Lumber Company, Highland Manufacturing, and Lumber Dealers Supply, Debtor.**

**Bankruptcy No. 90–05568.**

United States Bankruptcy Court, D. North Dakota.

Dec. 14, 1990.

Michael Fadlovich, Minneapolis, Minn., for U.S. Trustee.

Barbara Stuart, Minneapolis, Minn., for debtor.

Edward Klinger, Moorhead, Minn., for Creditors Committee.

Kim Anderson, Minneapolis, Minn., for First Bank.

Vik Welk, Fargo, N.D., Creditors' Committee member.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the court is an Application For Interim Fees And Expenses filed by the Debtor's counsel, Moss & Barnett, brought pursuant to sections 330 and 331 of the Bankruptcy Code.

The Application, filed November 9, 1990, requests interim fees of $122,382.85 for 925.15 hours of legal services provided the Debtor for the period July 17, 1990 through October 31, 1990 inclusive, and for expenses incurred for the same period of $9,938.71. Attached to the application are some 121 pages of itemized billing statements detailing the work performed, the hours spent and the attorneys involved. Objections were interposed by the United States Trustee, the unsecured creditors committee, and individual unsecured creditors, all of whom amplified their objections by detailed briefs. The application came on for hearing on November 29, 1990.

1.

The Debtor, Robertson Companies, Inc., is a publicly held corporation with in excess of 790,000 shares outstanding. It has been involved in the wholesale and retail lumber and building materials trade since 1881 and, operating through three divisions, owned and operated twenty lumber yards in North Dakota and Minnesota. It also manufactures various building components such as roof trusses and doors. It maintains an inventory of residential lots as a service to contractors and from time-to-time constructs spec houses and garages. It filed for relief under Chapter 11 on July 17, 1990, and in its schedules listed debts of $7,046,000.00 inclusive of $3,486,000.00 secured and $3,477,000.00 unsecured. It listed assets of $14,000,000.00 inclusive of $6,000,000.00 real property and $8,000,000.00 in personal property.

The filing was precipitated by severe competition, the inability to meet secured loan agreements and difficulties with trade creditors, one of whom had sought summary judgment in excess of $730,000.00 and who had scheduled a hearing on the same for the day following the petition filing. The company lost money in the two years preceding its filing and is projected to continue suffering losses at least through 1991.

By Order of July 23, 1990, the firm of Moss & Barnett was authorized to appear

on behalf of the Debtor with specific permission being granted to four members of the firm: James E. O'Brien, Barbara G. Stewart, Mary E. Langan and David M. Henry. Previous to undertaking the Chapter 11 representation, Moss & Barnett had provided the Debtor with general legal services in connection with its ongoing corporate and financial problems and received $135,789.00 in fees and $8,215.00 in costs for the period between January 1, 1990 and July 17, 1990.

Since July 17, 1990, a variety of services have been provided the Debtor by fifteen different Moss & Barnett attorneys and four paralegals at hourly rates ranging from a high of $195.00 per hour to a minimum of $55.00 per hour.

Citing the Debtor's continuing financial problems and apparent lack of any reasonable reorganization prospects, the objecting parties first assert that the fees are excessive in view of the results thus far obtained, particularly since the firm already received $135,000.00 for pre-petition services ostensibly rendered in connection with the very financial conditions still plaguing the company. They also believe that there has been serious over billing by the various firm attorneys who, they charge, have engaged in unnecessary duplication of services. As an example of this, the United States Trustee points to a billing dated July 19, 1990, where five firm attorneys working on matters relating to cash collateral needs and agreements, billed out 24.6 hours earning $3,280.00 in one day on cash collateral matters alone. The objecting parties also feel that the hourly rates charged by the Moss & Barnett attorneys are far in excess of what is typical for North Dakota and further that the expense charges are improper.

### 2.

Section 330 of the Bankruptcy Code provides that the court may award:

(1) reasonable compensation for actual, necessary services rendered by ... [an] attorney ... and by any paraprofessional persons employed by such ... attorney ... based on the nature, the extent, and the value of such services, time spent on such services and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

This court has in past cases analyzed attorney fee applications by reference to the twelve point criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See e.g., In re Trout*, 108 B.R. 235, 236 (Bankr.D.N.D.1989) and *In re Garnas*, 40 B.R. 140, 141 (Bankr.D.N.D.1984). These twelve factors are:

(1) the time and labor required;

(2) novelty and difficulty of the issues;

(3) skill required;

(4) preclusion of other employment;

(5) customary fee;

(6) whether the fee is fixed or contingent;

(7) time pressures;

(8) amount involved and results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client;

(12) awards in similar cases.

In a series of five cases the United States Supreme Court announced a departure from the *Johnson* criteria and said that the "lodestar" method constituted a balanced approach to the fee analysis problem.[1]

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the court believed a more equitable starting point for determination of a reasonable fee is the number of hours *reasonably* expended multiplied by a *reasonable* hourly rate. Although the court in fashioning the lodestar method said that many of the *Johnson*

---

**1.** *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Pennsylvania* *v. Delaware Valley Citizens Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); and *Pennsylvania v. Delaware Valley Citizens Council,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

criteria were subsumed within the original calculation, those factors still exist whether separately articulated or not since the notion of what constitutes a *reasonable* expenditure and what constitutes a *reasonable* hourly rate depends in many respects on the very same inputs. *Hensley* created a hybrid approach that shares elements of both *Johnson* and the lodestar method of fee analysis. *Pennsylvania v. Delaware Valley Citizens Council,* 478 U.S. at 564, 106 S.Ct. at 3097.

A reasonable hourly rate is the prevailing market rate in the community for similar services by lawyers of reasonably comparable skills, expertise and reputation. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The argument that Moss & Barnett attorneys should be restricted to an hourly rate typical for North Dakota attorneys is unduly parochial particularly in this age of national and regional law firms working on larger more complex bankruptcy cases of more than local import. Moss & Barnett argues that the hourly rates charged in this case are their regular hourly rates and as such conform to the usual rates for attorneys of similar ability in the metropolitan Minneapolis area. The court accepts this as a fair statement and believes that the hourly rates charged are reasonable given the fact that the Debtor is a fairly large company with business interests spanning several states.

Whether the hours billed were "reasonably expended" is a far more difficult analysis and recalls many of the *Johnson* criteria. In *Hensley* the Supreme Court itself said that good faith billing judgment is important and attorneys are ethically obligated to exclude from fee requests hours that are excessive, redundant and unnecessary. 103 S.Ct. at 1939–40.

The notion of reasonableness means that all time actually expended may not necessarily be billed. Here we get into the objections of unnecessary, excessive time and duplication of services. This case has been pending since July 17, 1990, with the goal presumably being to save the company through a confirmed Chapter 11 plan. Utilizing the expertise of numerous lawyers, the firm consumed 173.2 hours and charged $18,372.00 in fees for services relating to the preparation of the Chapter 11 petition and schedules. Related issues dealing with creditors' claims consumed 137.85 hours and generated $16,285.75 in fees. 225.9 hours have been expended on a plan and disclosure statement and billed at $37,589.39. Cash collateral matters consumed 215.4 hours and generated $31,408.75 in billings.

Duplication of effort is very difficult to discern from a mere review of the statements themselves and reaching a general conclusion that duplication has in fact occurred would be very subjective. Indeed, the Supreme Court in putting its imprimatur on the lodestar method noted in the later case of *Pennsylvania v. Delaware Citizens Council* that the *Johnson* criteria were too subjective and gave judges unlimited discretion. 478 U.S. at 563, 106 S.Ct. at 3097. At first blush, a charge of $18,372.00 for petition and schedule preparation does seem excessive but the billing statements do provide in fairly definite detail what activities were performed and by who. Except for certain specific items, the court could not detect any overt duplication. While it is correct to say that where more than one attorney is involved in a project there exists a greater propensity to duplicate efforts, it also is correct that the mere employment of two or more professionals on the same project does not in and of itself necessarily make it duplicative. What may appear routine is not always so in the context and complexities of a particular case. *In re Washington Mfg. Co.,* 101 B.R. 944, 954 (Bankr.M.D.Tenn.1989).

Each of the attorneys involved apparently dealt with a particular aspect of the case and approached the particular project with an eye focused by his or her particular expertise; *i.e.,* bankruptcy, tax, securities, employment law, corporate law, real estate. Many of the matters were handled on an expedited basis under short time constraints and although not resulting in protracted court time, did apparently necessitate considerable out of court negotiations.

In testimony the individual hired as the Debtor's crisis manager and now serving as its president, expressed satisfaction with the firm's counsel and experience, stating that the work done by it was necessary and was expeditiously completed. It was his belief that the condition of the company warranted the work done.

The court feels it would be highly speculative for it to supplant the president's opinion based as it is on intimate knowledge of the Debtor's condition, with its own. Whether the work completed post-petition was excessive or unwarranted in view of the firm's pre-petition involvement in billings is also a matter of speculation—speculation which the Supreme Court cautions against. To conclude that the fees applied for are *in toto* excessive merely on the face of the billings would require the court to ignore the detailed statements, engage in speculation and in general guess at what is or is not a "reasonable expenditure".

In the statements there do appear several activities separately billed by various attorneys which appear to either be unnecessary or duplicative. These will be presently discussed:

■ *Petition and Schedule Preparation.* Throughout the month of July, six attorneys were engaged in various activities related to the assembly of information necessary to the petition and its schedules. On July 18th there is a charge for attorney Henry denoted, "revise, proofread and edit schedules and statements." On July 19, 20, 23, 24, 25, 26, 27 and 30, there is a similar charge for attorney Henry and yet on July 31st he bills again for further "review, analyze and organize information for schedules and statements." Attorney Stewart also billed for reviewing the schedules and statement of affairs in July and on several occasions in August. It strikes the court as unnecessary for lawyers to repeatedly review, revise and proofread schedules and statements. Although the fee statement does not provide a separate breakdown for this particular item, it is safe to say that on each date, given the separate billings for that date, that at least one hour was devoted to this chore by each lawyer each time. The court will reduce the September 28, 1990 statement by seven hours at Attorney Henry's $115.00 per hour rate. (Minus $805.00).

*Cash Collateral Preparation.* Commencing in July and continuing through October, considerable time was expended in cash collateral negotiations. On August 1, Attorneys Henry, Stewart and Langan all billed time for the preparation and review of a supplemental motion for use of cash collateral. This too, appears duplicative and the court strikes one hour from each of the attorneys' time billing. (Minus $385.00). On August 1st, Attorney Skinn billed for "prepare exhibits for cash collateral hearing". A day later Attorney Stewart billed for the same thing. This is duplicative and two hours are stricken from Stewart's August 2nd billing at $155.00 per hour. (Minus $310.00). On August 3rd both Attorneys O'Brien and Langan billed for the analysis and review of a cash collateral agreement with lenders. This, too, appears duplicative and one hour is stricken from O'Brien's billing. (Minus $195.00).

*Plan and Disclosure Statement.* Considerable time has been expended by various attorneys in negotiations, analysis and drafting of a disclosure statement and plan, both of which were filed with the court on November 14, 1990. A review of the billing statements reveals that Attorneys O'Brien and Hirsh both billed for the preparation of board minutes on September 12th. It strikes the court as unnecessary for both attorneys to be providing this function. Accordingly, O'Brien's billing is reduced by one-half hour. (Minus $97.50). In the October 15, 1990 billing statement there is an item billed by Attorney Stewart on August 1, 1990, as "review of down-sizing projections", yet this very issue was the subject of a billing made on the same date by the same attorney in connection with a cash collateral project. This appears to also be a duplication and Stewart's billing is reduced by one hour. (Minus $155.00). A similar duplication appears at page 14 of the October 24th billing statement where, on August 8th Attorney Stew-

art billed for phone conferences and correspondence with Hugh Robertson. She also billed for the same matters on the same date in connection with a cash collateral fee statement. This appears duplicative and her fee is accordingly reduced by one hour. (Minus $155.00).

■ *Travel.* Various attorneys have billed out travel time at their usual hourly rates. It is inappropriate to bill unproductive time at a full hourly rate. As a matter of general principle this court allows travel time to be billed at one-half the normal hourly rate. *See also In re S.T.N. Enterprises, Inc.,* 70 B.R. 823 (Bankr.D.Vt.1987); *In re Seneca Oil Co.,* 65 B.R. 902 (Bankr. W.D.Okla.1986). Attorney Stewart's billing of 10.5 hours at the full rate is reduced by fifty percent. (Minus $813.75). Attorney Henry's three hours is reduced by fifty percent. (Minus $172.25). Attorney Langan's three hours is reduced by fifty percent. (Minus $172.25). Attorney O'Brien's three hours is reduced by fifty percent. (Minus $292.50).

The foregoing specific fee reductions total $3,553.25. Thus, from an examination of the face of the submitted fee statements, the fees are reduced to $118,829.60.

### 3.

■ One of the principal objections and the most difficult for resolution is the argument that the fees are generally unwarranted in view of the lack of any real prospects for reorganization. Responding, Moss & Barnett says that results obtained should not be a determining factor in that it, as the Debtor's bankruptcy counsel, has no duty to cut the Debtor's losses nor any obligation to "save the company". The firm does acknowledge, however, to having a duty to provide *effective* legal counsel. In the context of a Chapter 11 reorganization, this acknowledgement is tantamount to acknowledging that results are important. Indeed, they are. The whole purpose of a Chapter 11 filing is to accomplish the Debtor's reorganization and net out a fair return for the unsecured creditors. *In re Garnas, supra,* at 141. In the recent case of *In re Public Service Co. of New Hampshire,* 102 B.R. 276 (Bankr.N.H. 1989), the court said:

> "Reorganization counsel are not required to guarantee the success of a reorganization effort. However, professionals charging substantial fees for their expertise in producing results in reorganization cases are expected to show that that expertise has been appropriately employed, in the particular case, to justify a final determination that their high hourly fees are, in fact, reasonable fees in all the circumstances of the case."

102 B.R. at 278.

In *Hensley,* the court pointed out that, "the product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the court to adjust the fee upwards or downward ...". 461 U.S. at 434, 103 S.Ct. at 1940. The court then endeavored to clarify the proper relationship of results to attorney's fees saying, "If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole, times a reasonable hourly rate may be an excessive amount." 461 U.S. at 436, 103 S.Ct. at 1941. The court acknowledged there to be no precise rule or formula for taking into account the result, saying the court may "simply reduce the award to account for the limited success". Later in *Pennsylvania, supra,* the Supreme Court said:

> "[W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and produce the best possible results commensurate with his skill and his client's interest."

478 U.S. at 565, 106 S.Ct. at 3098.

It is typical in bankruptcy cases for courts to reduce the "lodestar" because of poor performance or poor results. *See e.g., In re Williams,* 97 B.R. 330 (Bankr.N.D. Tex.1989) (fee of over $15,000 for Chapter 12 debtor's attorney was unreasonable and would be reduced to $10,000 because the case was a learning process for the attorney); *Matter of Broady,* 92 B.R. 389 (Bankr.W.D.Mo.1988) (reduction of fees by 25% because pre-bankruptcy "debt restruc-

turing" services were largely unavailing and unsuccessful); *Jungkurth v. Eastern Financial Service, Inc.*, 87 B.R. 333 (D.C. E.D.Pa.1988) (holding that the bankruptcy court properly reduced the lodestar amount of attorney's fee award by one-third to reflect counsel's admission that approximately one-third of his time for certain items was expended on unsuccessful issues).

■ In the instant case the firm acknowledges to have filed a plan which plainly violates the absolute priority rule and which is unconfirmable without considerable concessions by the unsecureds—concessions they appear unlikely to extend. The services envisioned by section 330 of the Code are services resulting in meaningful benefit. At present it is at best uncertain whether a successful plan of reorganization can be prosecuted and this court, in considering the instant fee application cannot ignore the present state of the case in its determination of what is "reasonably expended" time. Full compensation is warranted only when a confirmable Chapter 11 plan is apparent. Until then, the court will allow as interim compensation seventy-five percent of the fees as adjusted withholding the balance pending ultimate disposition.

Accordingly, the firm of Moss & Barnett is allowed $89,122.20 as interim fees, the balance of $29,707.40 is withheld pending review of the final application against the "lodestar" analysis taking into account results ultimately achieved.

Expenses are allowed in the sum of $9,938.71.

SO ORDERED.