In re 1801 RESTAURANT, INC., Debtor.

Bankruptcy No. 82–2–1564.

United States Bankruptcy Court,
D. Maryland.

June 6, 1984.

Arthur D. Webster, Salisbury, Md., Trustee of bankruptcy estate.

Lloyd Whitehead, Salisbury, Md., for Maurice Parrish.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter comes before the court upon the motion of the trustee, Arthur D. Webster, for an order assessing costs and damages against Maurice Parrish. The source of the trustee's claim is that he filed a notice of private sale for substantially all of the assets of the estate of the debtor, 1801 Restaurant, Inc., and the sale was delayed by a series of spurious objections, requests for hearings, requests for reconsideration, and a notice of appeal which the trustee alleges were totally without merit and filed solely for the purpose of delay.

The property sought to be sold is a restaurant and parking area located at 1801 Coastal Highway, Ocean City, Worcester County, Maryland.

The trustee also sought to prove that various representations made by Mr. Parrish were false. The trustee claims per diem interest incurred as a result of the delay and administrative expenses. While the court will recite the dreary history of this case, the court finds, particularly from the testimony of the brother of Maurice Parrish, that the sole purpose of the various pleadings filed by respondent was to prevent the sale to a third party and to leave the door open to permit Mr. Parrish and his associates to find some way to purchase the restaurant. The same restaurant had been purchased by Mr. Parrish some time previously from Mrs. Clara Imogene Evans whose interest in the restaurant was wiped out because of the failure of the Parrish group to make payments to the SBA and various other defaults. Maurice Parrish was the president of the debtor, and the various actions taken by him in this case were brought in the cloak of an unsecured creditor owed some $2,300. The total unsecured debt was only $4,750, so Maurice Parrish's claim of $2,300 represented one-half of the unsecured debt. The remaining half were debts to certain attorneys and appraisers who were not paid by the debtor in the period shortly before the filing. Some $360,000 of secured debts were said to be owed to the Peninsula Bank and the United States Small Business Administration.

On August 31, 1983, the trustee filed a notice of public sale in the form of an auction sale conducted in Baltimore City, Maryland. Maurice Parrish filed a late objection that was received by the court and overruled. Maurice Parrish then filed an appeal from the ruling of Judge Schneider, and the progress of the sale remained in neutral.

In early December, Ralph Capabianco, the vice-president for operations of Hamburger Hamlets, Inc., a national restaurant chain, expressed an interest in purchasing the property. The trustee sought to have all security claims satisfied, and, thereafter, the trustee and Hamburger Hamlets, Inc., entered into a binding contract on December 14, 1983, for the purchase and sale of the 1801 Restaurant and the adjacent land. The contract provided for a purchase price as follows:

A. $36,321.79 to Seller for full satisfaction of the first mortgage of Peninsula Bank.

B. $354,470.51 to Seller, for full satisfaction of the second mortgage to Small Business Administration.

C. $10,000.00 to Seller for full satisfaction of the mechanic's lien of I.W. Long & Sons, Inc.

D. An amount not to exceed $15,000.00 to Seller, for payment of the administrative expenses as submitted and approved by the United States District Court in the Bankruptcy Estate of 1801 Restaurant, Inc.

E. An amount sufficient to pay the outstanding real and personal property taxes due on the subject property, including sanitary district charges and water bill currently estimated to be $10,638.19. Trustee represents that he will make a good faith effort to supply the exact figure including any personal property tax due and that the total amount will not significantly exceed $10,638.19.

This contract was followed by a notice of private sale sent out by the trustee on December 19, 1983, directing all objections to be filed on or before December 23, 1983. Pursuant to Bankruptcy Rule 9006(c)(1), Judge Schneider shortened the notice period for good cause shown. An objection was lodged to the sale by Maurice Parrish on December 23, 1983, complaining of inadequacy of price, shortness of time, and an allegation that Mr. Parrish had reason to believe:

"that an offer will be made to the trustee which will provide for the sale of the property at a much higher figure than the one proposed by Hamburger Hamlets, Inc., which offer will provide a fund

from which unsecured creditors may recover a dividend."

This allegation was a complete fabrication. Maurice Parrish had no purchaser in hand, and his late blooming concern for payment of the unsecured professionals whom he had stiffed was window dressing and nothing more.

Nevertheless, as Judge Schneider was unaware that the alleged purchaser in the wings did not exist, he passed an order on January 3, 1984, providing for an additional ten-day period for presentation of a contract, failing which Mr. Parrish's objection would be deemed denied. Undaunted, Mr. Parrish filed a request for hearing on his objection to private sale on January 13, 1984, and on January 16, 1984, Judge Schneider overruled the objection to the notice of sale. On January 23, 1984, Maurice Parrish filed a request for reconsideration which was denied on January 26, 1984.

Having run to the end of his string in bankruptcy court, he filed a notice of appeal to the United States District Court for the District of Maryland. On January 26, 1984, Mr. Parrish presented to the trustee a contract on behalf of himself and one Richard Wilson, providing for $29,000 additional to the Small Business Administration and $5,000 for the unsecured creditors. While the court does not have any recollection of testimony in this respect, the court suspects that the loan from the SBA was guaranteed in some fashion by Mr. Parrish.

The court finds that Richard Wilson, the alleged purchaser, was not ready, willing, and able to consummate the sale. He was at most a front man for a phantom purchaser. A motion for stay pending appeal filed January 31, 1984, was denied following a hearing on February 14, 1984. Still undaunted, Mr. Parrish presented yet another contract merely obliterating the names in the other agreement and tendered a down payment in the form of a corporate check. The Gross contract, although regular on its face, was not accepted by the trustee. The benefit to the estate was an additional $5,000 for the unsecured creditors. The detriment would be the delay in

settlement and the possibility of the loss of the legitimate contract with Hamburger Hamlets, Inc., which ultimately settled on March 19, 1984. But no additional expense to the estate was occasioned by the delay, as the secured creditors held to the settlement agreements that they had made.

■ From what the court can determine from the report of sale, Hamburger Hamlets, Inc., appears to have paid more funds than were required to pay the agreed amounts to the secured creditors, the tax claims, the trustee's statutory commission, and approximately $1,200 in miscellaneous charges. In short, the delay caused by the false and frivolous pleadings did not, in the peculiar circumstances of this case, cost the trustee any additional money. That bill was picked up by Hamburger Hamlets, Inc. As no loss accrued to the trustee, the trustee may not recover on this account.

■ On the other hand, the continuing deception of Maurice Parrish brings him within parameters of Bankruptcy Rule 9011, which provides in pertinent part:

> The signature of an attorney or a party constitutes a certificate by him that he had read the document; .... and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Bankruptcy Rule 9011 is a restatement of Rule 11 of the Federal Rules of Civil Procedure. Numerous cases support the imposition of sanctions for willful violation of this Rule. *See generally,* Wright & Miller, *Federal Practice & Procedure,* §§ 1331 *et seq.* The requirements of Rule 11 apply to *pro se* litigants as well. *Pro se* litigants have the same duties and obligations as

attorneys under Chapter 11, no more and no less. *See Ginter v. Southern,* 611 F.2d 1226, 1227–28 n. 1 (8th Cir.1979); *See also In re Bayport Equities Corp.,* 36 B.R. 575 (BC C.D.Cal.1983).

 While counsel for the trustee has not submitted any detailed time record, in ascertaining fees in such matters, the court can reach a reasonable approximation. The sanction to be imposed is an order to Maurice Parrish to pay attorney's fees in the sum of $1,250, to compensate the trustee's counsel for the time and effort expended in connection with resisting the Parrish harassment and delays.

Counsel for the trustee will submit an order in accordance with the foregoing.