**In re Kye TROUT, Jr., Debtor.**

**Bankruptcy No. 87–05075.**

United States Bankruptcy Court, D. North Dakota.

Nov. 22, 1989.

Phillip D. Armstrong, Minot, N.D., trustee.

LaRoy Baird, Bismark, N.D. for debtor.

Christian Onsager, Denver, Colo., Lawrence Klemin, Bismark, N.D., for Norwest Bank, Minn.

Max D. Rosenberg, Bismark, N.D., for Creditors Committee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the court for consideration is the final fee and expense application of the Debtor's counsel, LaRoy Baird, filed September 1, 1989. By said application, final fees and expenses of $10,021.46 are sought for the period March 31, 1988, through August 15, 1989. ($7,280.00 in fees and $2,741.46 in expenses).

No objections have been raised regarding the reasonableness, necessity, or value of the services rendered by Mr. Baird but Norwest Bank Minnesota, N.A., one of the Debtor's principal creditors, urges the court to deny Mr. Baird any compensation whatsoever alleging that Mr. Baird intentionally failed to fully disclose to the court and creditors complete settlement terms between the Debtor and another creditor in connection with an adversary proceeding. The bank urges that such failure on the part of Mr. Baird serves as sufficient basis for complete denial of all fees and expenses.

The application came on for hearing on October 30, 1989.

Before discussing the facts central to the bank's objection, it is well to review the merits of the application uncolored by those allegations.

1.

The matter of compensating attorneys and other professional persons is wholly discretionary with the court and each application is reviewed by the court, irrespective of whether or not objections have been filed. 11 U.S.C. § 330. *In re Haldeman Pipe & Supply Company,* 417 F.2d 1302 (9th Cir.1986); *In re Cuisine Magazine, Inc.,* 61 B.R. 210 (Bankr.S.D.N.Y.1986). In considering fee applications this court has adopted the twelve-point criteria first set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *See In re Garnas,* 40 B.R. 140 (Bankr.D.N.D.1984). This widely recognized twelve part analysis has its roots in section 330 of the Code which allows the court to award debtors' attorneys, "reasonable compensation for actual, necessary services rendered ... based on the nature, the extent and the value of such services, the time spent on such services and the cost of comparable services ...". The court is familiar with the complexities of this case and has reviewed the files against the work performed by Mr. Baird. From this review it is satisfied, the bank's objection aside, that the services rendered by Mr. Baird are fairly represented in the pending application for final compensation and meet the section 330 criteria.

2.

We turn now to the circumstances which gave rise to the bank's objection.

By Complaint filed May 22, 1987, First Federal Savings and Loan Association of Bismarck commenced an adversary proceeding (Adversary 87-7072) against the Debtor, Kye Trout, Jr., seeking to have his indebtedness arising from two promissory notes declared non-dischargeable under section 523(a)(2)(A) of the Bankruptcy

Code. First Federal was represented by Attorney David A. Tschider and the Debtor was represented by Mr. Baird. Several days prior to trial, the Clerk was advised of a settlement between the parties and on June 27, 1988, a settlement stipulation was filed. Based upon the stipulation as filed, the court entered an Order for Dismissal on July 25, 1988.

Settlement negotiations between the parties were complex and protracted over many months. In reaching a means of compromising the adversary proceeding, the name of Energy Resources, Inc. came up. The Debtor represented to Mr. Baird that this Montana corporation was wholly owned by the Debtor's son, Stephen A. Trout, and that Energy Resources, Inc. would assume the Debtor's obligation to First Federal. Mr. Baird relayed this information to Attorney Tschider, assuring him thereby that the Debtor did not own any of Energy Resources, Inc. and that Energy Resources, Inc. was not part of the Debtor's estate. Attorney Tschider and First Federal officers were satisfied from this information and from independent investigation that Energy Resources, Inc. was owned solely by Stephen A. Trout and thus accepted the settlement arrangement involving Energy Resources, Inc.[1]

Energy Resources convened a special meeting on February 3, 1988, at which the Debtor was elected president and secretary. The First Federal litigation was discussed which culminated in a corporate resolution providing for the assumption by Energy Resources, Inc. of the Debtor's obligations to First Federal. This was to be accomplished by means of a promissory note and assignment of royalty proceeds along with a cash payment.

The Debtor did not want public disclosure of Energy Resources' involvement and so advised both Mr. Baird and Attorney Tschider. Attorney Tschider re-drafted the stipulation for settlement omitting any reference to Energy Resources' involvement. A letter of transmittal dated May 10, 1988, from Attorney Tschider to Mr. Baird states:

> "As concerns the settlement stipulation, it was my understanding that you did not want the bankruptcy court or the other creditors to know any details concerning the amount of payments to First Federal or the source thereof."

To achieve this objective two separate settlement stipulations were drafted by Tschider and signed by the parties on June 15, 1988. The first is the sanitized three-page stipulation filed with the court in connection with the adversary proceeding. It is signed by the Debtor in his individual capacity and makes no reference whatsoever to Energy Resources or the fact that Energy Resources, Inc. was assuming the indebtedness. As filed with the court, this stipulation acknowledges First Federal to have a security interest in a C.D. owned by the Debtor and states that the Debtor will take the necessary steps to cause its release from the estate. This is the only reference to any payment to First Federal in consequence of its section 523 complaint. The stipulation then concludes with a statement that First Federal's adversary claim shall be dismissed with prejudice.

The second stipulation, eight pages in length, is signed by the Debtor as the agent, president and secretary of Energy Resources, Inc. In considerable detail the second stipulation relates that it is entered into for the purpose of settling the dispute arising out of First Federal's adversary complaint and provides that in consideration for the release and satisfaction of First Federal's claim against the Debtor, Energy Resources, Inc. will pay First Federal $12,-790.96 in cash on behalf of the Debtor and will further deliver to First Federal a note for the balance of $50,346.98 secured by an assignment of proceeds from royalty and overriding royalty interests. On December 21, 1987, Energy Resources, Inc. paid First Federal $12,790.96 and in February 1988, the Debtor, as president and secretary of Energy Resources, Inc., executed the requisite note and assignments.

---

1. At the hearing Attorney Tschider acknowledged that his investigation consisted solely of speaking with the Debtor and reviewing the bankruptcy statement of affairs and schedules. He did not obtain the stock or minute books of the corporation.

Energy Resources, Inc. did not appear on the Debtor's statement of affairs or schedules but a subsequent Rule 2004 examination conducted by Norwest Bank in 1989 revealed the fact that the Debtor not only was the president of Energy Resources, Inc. but was a major shareholder. Mr. Baird acknowledges that this is apparently the case but states that at the time the corporate resolution was provided and the several stipulations entered into that he, along with Attorney Tschider and First Federal, believed the Debtor had no ownership interest in Energy Resources, Inc.

Upon learning the true relationship between Energy Resources, Inc. and his client, Mr. Baird was forthcoming in providing the bank with whatever files he had on Energy Resources, Inc.

3.

Believing at the time that Energy Resources' assets were free of any interests of the estate, Mr. Baird asserts under such circumstances that the settlement need not have been disclosed nor submitted to the court for approval. The bank argues on the other hand that pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, full disclosure of settlements is always necessary to protect creditors and to generally preserve the integrity of the bankruptcy process.

█ It must be recognized at the outset that there exists a distinction between ordinary civil litigation between parties dealing with their own funds and litigation in the context of bankruptcy. Rule 41(a)(1) of the Federal Rules of Civil Procedure (applicable in bankruptcy by Rule 7041) allows for the dismissal of actions by the filing of a stipulation for dismissal signed by all parties who have appeared in the action. Upon filing of the stipulation the dismissal is effective without the necessity of court approval. *Gardiner · v. A.H. Robins*, 747 F.2d 1180 (8th Cir.1984) (holding that in ordinary litigation the settlement of a dispute is solely in the hands of the parties with which courts normally do not become involved). This rule, however, is not absolute even in non-bankruptcy situations. The dismissal or compromise of class ac-

tions cannot be dismissed without notice to the class and court approval nor can actions where a receiver has been appointed be dismissed without court order. *See* Rule 23(c) and Rule 66 of the Federal Rules of Civil Procedure. Once a bankruptcy has been filed the absolute dismissal right of Rule 41 is further circumscribed by Rules 9019(a) and 2002(a)(3) which provide for the compromise or settlement of a controversy only upon notice, hearing and court approval. The reason for these requirements in a bankruptcy case is not hard to discern. The Bankruptcy Code envisions a process whereby all parties in interest have equal access to information regarding the debtor's assets, liabilities and claims. As contrasted to a non-bankruptcy situation, once a person elects to avail himself of the benefits of the federal bankruptcy laws by the filing of a petition, he can no longer expect to have any financial secrets. The Code contemplates a full and complete disclosure.

In bankruptcy cases as well as those non-bankruptcy cases requiring court approval of settlements, approval is committed to the sound discretion of the court consistent with what is in the best interest of the parties in interest or the estate. *In re Flight Transp. Corp. Securities Litigation*, 730 F.2d 1128, 1135 (8th Cir.1984); *In re Hancock–Nelson Mercantile Co., Inc.*, 95 B.R. 982 (Bankr.D.Minn.1989); *In re Bell & Beckwith*, 93 B.R. 569, 574 (Bankr. N.D.Ohio 1988); *In re Hanson Industries, Inc.*, 88 B.R. 942, 945 (Minn.1988).

In evaluating a proposed settlement agreement the courts have devised a list of factors to consider, to-wit:

1. The probability of success of the merits in the litigation;

2. The difficulties in collection of any resulting judgment;

3. The complexity and expense of the litigation and the inconvenience and delay likely in attending it;

4. The interests of the creditors;

5. Whether conclusion of the litigation promotes the integrity of the judicial system. *E.g. In re Hancock–Nelson Mercantile Co., Inc., supra* at 990.

The Supreme Court has held that in exercising its discretion the court must avoid "mere boiler-plate approval" and instead base its conclusion upon a "comprehensive consideration of all relevant factors". *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968). Achieving this result mandates that there be complete disclosure of the settlement terms by the parties to the settlement. Without full disclosure an informed decision on the merits of the settlement,—how it affects the parties in interest or the case generally cannot be made. Moreover, without complete information potential exists for abuse. Partial disclosure is tantamount to no disclosure at all and is a breach of the spirit and intent of Rules 9019 and 2002.

Mr. Baird, relying upon Rule 1.6 of the ABA rules of professional conduct as adopted in North Dakota, argues that counsel must maintain settlement confidentiality except in limited situations.[2] He asserts that there is no general rule regarding settlement disclosure and before making a disclosure to comply with any law regarding the same, the law regarding disclosure must be clear.

Lawyers representing debtors in bankruptcy are placed in a somewhat unique position regarding information bearing upon their clients' financial, business, and property interests. They are also placed in a unique relationship with the court. As before stated, once a bankruptcy case is filed a debtor is shorn of all rights to shield his finances from public scrutiny. Consistent with section 521 of the Bankruptcy Code, the debtor at case outset must file a list of creditors, a schedule of assets and liabilities, a schedule of current income and current expenditures as well as a statement of financial affairs. Thus complete financial candor is the expected standard for anyone commencing a bankruptcy case. No attorney-client privilege can be claimed relative to such information whether it emanates from the original statement and schedules or arises as a result of a subsequent adversary settlement stipulation. There are simply no client confidences or secrets entitled to protection. A limited exception to this proposition exists as to documents filed in a case which a court may expunge in order to protect trade secrets or remove defamatory matter. *See* 11 U.S.C. § 107.

An attorney appointed by a bankruptcy court also has a fiduciary obligation to that court. *Brown v. Gerdes,* 321 U.S. 178, 182, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944); *Matter of Futuronics Corp.,* 655 F.2d 463 (2nd Cir.1981); *Matter of Roger J. Au & Son, Inc.,* 71 B.R. 238 (Bankr.N.D.Ohio 1986). Among the attorney's responsibilities are to use his best efforts to ensure that his client, the debtor, is aware of the Code mandated disclosures and see that the client in timely fashion makes those disclosures in the appropriate manner. To this end, it is incumbent upon the debtor's attorney to see that his client is forthright with him and the court regarding settlements with creditors whether arising in an adversary or otherwise. Secrecy in such matters should be nonexistent. When, in the course of representing a debtor in an adversary proceeding, the debtor's attorney presents the court with a settlement stipulation, the court, in fulfilling its responsibility under Rule 9019, has the right to rely upon the stipulation as filed as being a true and complete representation of the terms. If the stipulation as filed is something less than this the very purpose of Rule 9022 and Rule 2002 is subverted.

■ Courts have addressed flagrant breaches of an attorney's fiduciary duty by a total denial of compensation. *Matter of Futuronics Corp., supra.* A sanction of the magnitude requested by the bank is not warranted by the circumstances of this case. Mr. Baird did not know the Debtor had an interest in Energy Resources, Inc. and as soon as he did discover the true

---

**2.** Rule 1.6 of the North Dakota Rules of Professional Conduct as relevant provides: ,"a lawyer shall not reveal or use to the disadvantage of a client, information relating to the representation of the client unless require or permitted to do so by this rule." Subpart (g) however, goes on to state: "such revelation or use is: ... permitted to comply with law or court order".

situation, he was quick to provide the bank with whatever information was requested. Aside from failing to file the true stipulation with the court, Mr. Baird's other failing was trusting his client's representations without obtaining any documentary substantiation of them. An appropriate sanction in this case is to reduce the fee award by $1,000.00.

Accordingly, in consideration of the totality of the circumstances, the fee application of LaRoy Baird is allowed in the sum of $6,280.00 plus expenses in the sum of $2,741.46.

SO ORDERED.