**In re John H. ARMWOOD, Debtor.**

**Bankruptcy No. 94–65990.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 13, 1994.

David Lee Judah, Atlanta, GA, for debtor.

M. Regina Thomas, Chapter 13 Trustee, Atlanta, GA.

### *ORDER*

MARGARET H. MURPHY, Bankruptcy Judge.

This matter arises on the Chapter 13 Trustee's motions to dismiss with prejudice and for imposition of sanctions against Debtor and Debtor's attorney. Hearing was held August 1, 1994. Debtor did not appear. Pursuant to direction of the court at the hearing, Debtor's attorney filed a post-hearing report August 22, 1994 (the "Report"). An amendment to that report (the "Amendment") was filed September 26, 1994.

### STATEMENT OF FACTS

The instant case is Debtor's fifth Chapter 13 case. Debtor, as well as the attorney representing Debtor in this case (and in the third case), are attorneys licensed by the State Bar of Georgia. This case commenced April 29, 1994, upon the filing of a skeletal petition. A "skeletal" petition is one in which no schedules and plan are filed with the petition. Debtor filed no Schedules, filed no plan,[1] and listed only one creditor on

---

1. Bankruptcy Rule 1007 requires a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs (the "Schedules"). If those Schedules are not filed with the petition, they must be filed within 15 days thereafter. Bankruptcy Rule 3015 requires a Chapter 13 debtor to file a plan with the petition or within 15 days thereafter. Debtor may obtain an additional 15 days to file the required documents upon motion and for good cause shown, but it is the policy and practice in this district to grant only one such 15–day extension so that the filed Schedules will be available to creditors and the Trustee 5–7 days prior to the § 341 meeting and examination of the debtor by creditors (the "§ 341(a) Meeting"), over which the Chapter 13 Trustee presides. Without the Schedules, the (usually) one-time opportunity for creditors to examine the debtor at the § 341(a) Meeting, without incurring special costs, is a wasted expenditure of time.

the mailing matrix.[2] Debtor failed to attend the § 341(a) Meeting scheduled for May 24, 1994, and Debtor made no payments to the Chapter 13 Trustee as required by 11 U.S.C. § 1326.

Debtor filed four prior unsuccessful Chapter 13 cases. The first case, Case No. 90–00145, was filed January 4, 1990 and was dismissed October 15, 1990, pursuant to an earlier order entered August 29, 1990 and the Chapter 13 Trustee's motion of October 4, 1990. The second case, Case No. 90–14221, commenced October 10, 1990, and was dismissed July 17, 1992. The third case, Case No. 92–72519–SWC, was filed by the same attorney representing Debtor in the instant case. The third case commenced July 31, 1992, with the filing of a skeletal petition. The schedules and plan were filed August 28, 1992. That case was dismissed "with prejudice" December 29, 1992, pursuant to 11 U.S.C. § 109(g).

The fourth case, Case No. 94–62825–ADK, was filed February 28, 1994; and, as in the instant case, Debtor filed no Schedules or plan, listed only one creditor on the mailing matrix, and made no payments to the Chapter 13 Trustee. Debtor appeared for the § 341(a) Meeting and requested that it be reset but that request was denied because no Schedules or plan had been filed. The case was dismissed at the confirmation hearing; the order of dismissal was entered April 24, 1994.

In the instant case, at the August 1 hearing on the motions to dismiss and for sanctions, Debtor's attorney stated, on behalf of Debtor, who did not attend the hearing, that this case was filed to stop repossession of Debtor's automobile, a 1989 Mercury Marquis. No further information concerning the disposition of the debt secured by the automobile was provided. In an attempt to show that Debtor had a realistic possibility of reorganization when this case was filed, Debtor's attorney disclosed that one of the debts, which was listed in Debtor's Schedules filed in the second case (Case No. 90–14221) as a

secured claim in the amount of $50,000 (the "Lawsuit Debt"), had been reduced by settlement. Debtor's attorney, however, provided no documentation or precise information to support the allegation of settlement.

At the same hearing, and as a further showing that this case was filed in good faith, Debtor's attorney stated that when this case was filed, Debtor and Debtor's attorney believed that Debtor's student loans were more than seven years old and were, therefore, dischargeable. Upon investigation, however, Debtor's attorney asserts he discovered that, as a result of one or more deferments of payment obtained by Debtor, no grounds existed to claim that the student loans were dischargeable. Section 1328(a)(2) provides that student loans are nondischargeable in a Chapter 13 case unless they first became due more than 7 years, "exclusive of any applicable suspension of the repayment period," before the date of filing of the bankruptcy petition.

In an attempt to explain events which precipitated Debtor's financial difficulties, Debtor's attorney disclosed that Debtor had been expecting income from the City of Atlanta in the amount of approximately $3,500, which had not been paid as Debtor expected. Debtor's attorney also acknowledged that Debtor owes child support arrearages and estimated those arrearages to be $5,000–$7,000.

The court directed Debtor's attorney to file the Report to document information regarding the Lawsuit Debt, the student loans, and the child support. The Report and the Amendment, however, were inadequate. The Report and the Amendment failed to provide specific information regarding the student loans: the specific amounts and payees of the loans, the dates the loans first became due and payable, and the dates of the deferments.

With respect to the $50,000 Lawsuit Debt, paragraph 9 of the Report set forth, "This claim was settled for $3,000 in 1993." No documentation to support that statement was

---

**2.** Bankruptcy Rule 1007(a)(1) requires Debtor to file a list of names and addresses of creditors unless the petition is accompanied by a schedule of liabilities. BLR 715–1(e) N.D.Ga. requires every debtor to file with the petition a list of all creditors and their addresses in a mailing matrix format, which facilitates and expedites noticing of creditors.

attached to the Report. In the Amendment to the Report, copies of two documents from a New York state court (one document was incomplete) relating to the settlement were attached. Those documents show the Lawsuit Debt was reduced from $50,000 to $25,000 by settlement, and further reduced in the settlement, by payment from a third party, to $21,000.

The allegations in the Report concerning the unpaid compensation from the City of Atlanta were less precise than the statements made in the hearing, and provided no dates, specific amounts or support regarding any expected payment. Debtor's attorney set forth Debtor's belief that "child support arrearages total approximately $8,000," but again provided no specific facts or documentation.

The Report concludes, "This case was filed in good faith. But for the student loans and the City of Atlanta, the case would have been feasible."

## CONCLUSIONS OF LAW

### Motion to Dismiss "With Prejudice"

■■■ Section 1325(a) of the Bankruptcy Code sets forth a good faith requirement in Chapter 13. Bankruptcy courts have a duty to preserve the bankruptcy process for its intended purpose and may dismiss a Chapter 13 case which is filed in bad faith. *Shell Oil Co. v. Waldron*, 785 F.2d 936 (11th Cir.1986). The standard for determining whether a petition is filed in good faith is a "totality of the circumstances" test. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Jim Walter Homes, Inc. v. Saylors*, 869 F.2d 1434 (11th Cir.1989); *Kitchens v. Georgia Railroad Bank and Trust Co.*, 702 F.2d 885 (11th Cir.1983). The factors (the "Kitchens Factors") to be considered in determining whether a petition was filed in good faith are:

1. The amount of the debtor's income from all sources;

2. The living expenses of the debtor and his dependents;

3. The amount of attorney's fees;

4. The probable or expected duration of the debtor's Chapter 13 plan;

5. The motivations and sincerity of the debtor in seeking relief under the provisions of Chapter 13;

6. The debtor's degree of effort;

7. The debtor's ability to earn and the likelihood of fluctuation in earnings;

8. Special circumstances such as inordinate medical expenses;

9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

10. The circumstances under which the debtor has contracted debts and has demonstrated *bona fides*, or lack thereof, in dealings with creditors;

11. The burden which the plan's administration would place on the Trustee;

12. The extent to which claims are modified and the extent of preferential treatment among classes of creditors;

13. Substantiality of repayment to the unsecured creditors;

14. Consideration of the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7;

15. The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; and

16. Other factors or exceptional circumstances.

*Kitchens*, 702 F.2d 885.

■■■ In the event of serial petitions, to avoid dismissal on the grounds of bad faith, a debtor usually should be able to show a **change in circumstances** between the two filings. *In re Jones*, 105 B.R. 1007 (N.D.Ala. 1989).[3] A finding of bad faith does not require a finding of actual fraud, malice, scien-

---

**3.** *See also, In re Smith*, 105 B.R. 50 (Bankr. C.D.Cal.1989), in which the bankruptcy court comments upon the frustration with a system which is virtually powerless to stop the flood of petitions filed solely to stop a residential landlord from evicting a debtor from an apartment. Estimates of the percentage of total filings for this purpose in the Central District of California range from 25% to 40% of the nearly 80,000 cases filed annually.

ter or an intent to defraud. *Waldron*, 785 F.2d 936 (11th Cir.1986).

▮ Filing even a skeletal petition secures the protection of the automatic stay of 11 U.S.C. § 362(a) for both the honest debtor and the abusive debtor. The automatic stay serves to protect the honest debtor in desperate financial circumstances from creditor action and to provide a much-needed "breathing spell" to marshal resources and prepare to deal with creditors in a fair and orderly manner. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). The abusive debtor also obtains the protection of the automatic stay but employs it to delay or thwart creditor action while refusing to fulfill the duties imposed by the Bankruptcy Code. The uses of the automatic stay as both a shield and a weapon are well-known to attorneys, to the so-called "Pro Se Club" and to many debtors. In this case, Debtor and Debtor's attorney knew that by doing *nothing* to prosecute the Chapter 13 case properly, Debtor could reasonably expect to receive the protection of the stay until almost July 1994.[4]

▮ In the instant case, because Debtor failed to file Schedules or a plan and failed to attend the § 341(a) Meeting, little or no information is known relevant to Kitchens Factors 1–4, 11–13. Some information on 15–16 was provided in the Report and Amendment. Information is vague and incomplete as to some of the other Kitchens Factors but logical inferences may be drawn based upon the information which *was* disclosed and upon the absence of information that could support contrary inferences. Evaluation of the remaining Kitchens Factors compels a conclusion that Debtor filed this case in bad faith.

Debtor, by his attorney, readily concedes that his motivation for filing this bankruptcy petition was to prevent repossession of his car. The circumstances of the fourth filing so closely parallel those in this case that the logical inference is that the fourth case was also filed to prevent repossession of the car.

In neither the fourth nor his fifth case did Debtor list any creditor on the mailing matrix other than the creditor holding a security interest in his car.

A myth persists among potential and actual debtors appearing before this Court that certain debts may be selected to "bankrupt against" for the convenience of leaving other debts to be fully paid by the debtor or to "protect" the creditor from the necessity of fulfilling the duties of a creditor, such as filing a claim. This myth apparently devolves from result-oriented layman's logic, which may be bolstered by such ill-reasoning as:

(1) "I intend to pay that debt (or those debts)";

(2) "I don't *have* to list my debt to him(her), do I?" (mother, father, sister, brother, other close relative, friend, etc.)

or

"I CAN'T list my debt for *that* !" (gambling loss(es), undocumented individual-to-individual or other loan not intended to be traced by any member of the public, extra-legal or other transactions);

(3) "I don't owe that debt (or those debts)";

(4) "The listed debt(s) is(are) unfair";

(5) "The unlisted debt(s) is(are) unfair";

(6) "Why?" or "Why not?";

(7) "What they don't know won't hurt them". (In this context, "they" could be the Court, the Trustee, creditors or parties in interest.)

▮ The myth of creditor selectivity, however, is untrue. Pursuant to 11 U.S.C. § 521 and Bankruptcy Rule 1007, a debtor must file Schedules disclosing financial information fully, completely, accurately and honestly. A debtor may not pick and choose

---

4. Debtor's confirmation hearing was scheduled for June 20, 1994. But for the Chapter 13 Trustee's motions heard August 1, 1994, this case probably would have been dismissed orally at the confirmation hearing. Thereafter, a written or-

der and notice of the dismissal would be mailed to the creditor listed on Debtor's mailing matrix. Only upon receipt of that notice, which may not occur for 7–10 days after the hearing, would a

which assets and liabilities to disclose.[5] *Poolquip–McNeme, Inc. v. Hubbard,* 96 B.R. 739 (Bankr.W.D.Tex.1989).

> The bankruptcy schedules and statement of affairs do not ask the debtor to make an assessment of what he thinks are important assets or debts. Debtor must, under oath, list all creditors and assets, as well as all transfers of property within the prior year.

*Superior National Bank v. Schroff,* 156 B.R. 250, 256 (Bankr.W.D.Mo.1993). "The preference of certain creditors over others offends the paramount goal of bankruptcy—that of equality of treatment of creditors." *In re Dubberke,* 119 B.R. 677, 681 (Bankr.S.D.Iowa 1990). "Once a person elects to avail himself of the benefits of the federal bankruptcy laws by the filing of a petition, he can no longer expect to have any financial secrets." *In re Trout,* 108 B.R. 235 (Bankr.D.N.D.1989).

Further analysis under the Kitchens Factors shows that Debtor is a licensed attorney and disclosed no disability or other special circumstances which would inhibit his earning potential. Debtor disclosed that his contract with the City of Atlanta as director of the Atlanta Jazz Festival had not been renewed, but it appears that position was not Debtor's full time occupation. Although it appears that Debtor's income may fluctuate, such fluctuation would probably not substantially impair his ability to propose a Chapter 13 plan.

It appears that Debtor incurred the Lawsuit Debt as a result of a lawsuit filed against him in connection with his handling of an estate. The original claim of $50,000 appears to have been settled for no less than $25,000. The settlement in that case occurred only recently, in April 1994; accordingly, that liability does not appear to have been a factor in Debtor's decision to file this case.

However, the failure of Debtor and Debtor's attorney to be forthcoming concerning the amount of the Lawsuit Debt settled in April, 1994, supports the conclusion that this case was filed in bad faith. The settlement was obtained by affidavit executed April 7, 1994, and after hearing, adopted by the state court in New York April 15, 1994. Debtor filed this case April 29, 1994. The settlement reduced the debt to $21,000 by payment from a third party. The statement made in the Report filed August 22, 1994, that the $50,000 was settled for "$3,000 in 1993" was patently false. The settlement occurred before the fourth case was dismissed and before this case was filed. Nevertheless, Debtor and Debtor's attorney failed to provide accurate information regarding the settlement as late as August 22, 1994.

Debtor had multiple opportunities to acknowledge in this bankruptcy case the facts regarding the Lawsuit Debt, as settled earlier in April, but failed even to list the Lawsuit Debt's creditor in the mailing matrix; failed to acknowledge the debt in the Schedules, which were never filed; failed to deal with the debt in a plan, which was never filed; failed to explain the Lawsuit Debt at the § 341(a) Meeting, which Debtor never attended; and failed to be forthcoming at the hearing held August 1, which Debtor did not attend, and in the Report. Debtor produced no written evidence to support his contentions or to evidence the Lawsuit Debt until requested to do so by this court.

As Debtor did not list the Lawsuit Debt's creditor on the mailing matrix, Debtor may have intended to conceal the filing of this case from that creditor. On the other hand, the more likely explanation in view of all the facts and circumstances is that Debtor filed this case to deal with one specific problem, the imminent repossession of his automobile, and had no intention of actually reorganizing. In both the fourth case and in this case, Debtor made no apparent effort to reorganize. Debtor filed none of the Schedules he was required to file, failed to appear at the § 341(a) Meeting, and made no payments to the Chapter 13 Trustee.

Similarly, Debtor's failure to include in his mailing matrix the creditors for Debtor's child support arrearage and for the student

---

creditor know the stay was lifted upon dismissal so that it could proceed against Debtor.

**5.** Pursuant to 11 U.S.C. § 524, a debtor, particularly in Ch. 7, may voluntarily pay any debt after obtaining a discharge.

loan debts support a conclusion that those debts were not a factor in Debtor's decision to file this case. Neither Debtor's child support arrearage nor his student loan debts are dischargeable in either a Chapter 7 or a Chapter 13 case. Debtor's child support arrearage appears to have steadily risen due to nonpayment over a significant period.[6] Debtor, however, disclosed no imminent threat of a contempt proceeding or other attempt to collect that child support arrearage which may have influenced his decision to file this or any other of his bankruptcy cases.

Similarly, it appears that while Debtor may not have been servicing the student loans, the lenders were not threatening imminent collection proceedings. Debtor's failure to include the creditors for child support arrearages, student loans, and the Lawsuit Debt on the mailing matrix supports a conclusion that Debtor's only purpose in filing this case was to thwart the repossession of his automobile.

The last two of Debtor's cases are virtually identical. The fourth case was filed February 28, 1994, and was dismissed April 20, 1994. Debtor almost immediately refiled this case, the fifth April 29, 1994. Debtor's treatment of the fourth and fifth cases were virtually identical: Neither Schedules nor plan was filed. Debtor included only one creditor on the mailing matrix. Debtor made no payments to the Chapter 13 Trustee and failed to appear for the § 341(a) Meeting. In short, Debtor utterly failed to carry out any of the duties of an honest Chapter 13 debtor. Debtor showed no change in circumstances between the filing of the fourth and fifth cases. Finally, no illness, catastrophe or other excuse was alleged as reason for Debtor's filing or failing to prosecute the fourth and fifth cases.

■ The failure to perform the debtor's duties has become a ritual with a modest but significant percentage of debtors. When debtors utterly fail to perform or to prosecute a Chapter 13 case, with no *meritorious* reasons, the usual result is a dismissal at the hearing set for confirmation of the plan. Ordinarily, the dismissal is prompted by an objection to confirmation filed and served by the Chapter 13 Trustee or a creditor, or both. In the instant case, the confirmation hearing was set for June 20, 1994, a fact known to Debtor and Debtor's attorney as early as receipt of the "§ 341(a) notice"[7] mailed May 5, 1994.

This case was filed solely for the purpose of delaying and frustrating the exercise by the lienholder on Debtor's car of that creditor's legitimate remedies. None of the information offered by Debtor's attorney is sufficient to rebut this conclusion. Debtor had no intention to reorganize, to fulfill his duties under the Bankruptcy Code or to submit himself and all his liabilities and assets to the jurisdiction of this court. Such conduct is an abuse of the bankruptcy system and constitutes bad faith.

■ The usual remedy for a bad faith filing is dismissal "with prejudice," which works to prohibit the filing by a debtor of any case under Title 11 for a period of 180 days. The authority for such a dismissal arises under § 105(a), which empowers this court to issue any order, process or judgment which is necessary or appropriate to prevent abuse of the bankruptcy system. Section § 109(g) provides that a debtor is ineligible to file any case under Title 11 for 180 days if a prior case was dismissed for failure to abide by orders of the court or to appear before the court in proper prosecution of the case, **and** the failure was willful.[8] In the

6. The proof of claim filed in Debtor's first case by DeKalb County Child Support Recovery Unit showed an arrearage of $3,092; in the second case, $4,498; in the third case, $7,339.25.

7. The Notice includes full and complete information about the filing of the petition; includes bar dates for filing proofs of claim and objections to confirmation; schedules the § 341 Meeting and the hearing on confirmation of Debtor's proposed plan; and provides a proof of claim form on the reverse side of the notice. Usually on the same day, another order and notice is mailed to creditors which includes a summary of the debtor's plan and other information concerning the effects of confirmation of a Chapter 13 Plan.

8. A dismissal which results from willful conduct renders a debtor ineligible under § 109(g). The finding of willfulness may be made in a prior case in connection with the dismissal of that case (in which circumstance that finding would be *res*

instant case, Debtor's serial filing of skeletal petitions coupled with failure to appear at the § 341(a) Meeting and failure to make payments to the Chapter 13 Trustee, support a conclusion that Debtor's conduct was willful within the meaning of § 109(g). Therefore, dismissal of this case "with prejudice" for a period of 180 days is appropriate.

### Motion for Imposition of Sanctions

In the instant case, in addition to the sanction of dismissal "with prejudice," the Chapter 13 Trustee requests imposition of sanctions against Debtor and his attorney. Specifically, the Chapter 13 Trustee seeks imposition of monetary sanctions in an amount not less than $500, payable to the Clerk, U.S. Bankruptcy Court. As authority for imposition of such sanctions, the Chapter 13 Trustee relies, at least in part, upon Bankruptcy Rule 9011.

 Bankruptcy Rule 9011 governs the signing and verification of papers filed with the court and, therefore, provides authority for imposition of sanctions for bad faith filings. *In re Bellew,* 71 B.R. 72 (Bankr.M.D.Fla.1987); *In re Smail,* 129 B.R. 676 (Bankr.M.D.Fla.1991). *See also, In re McBride Estates, Ltd.,* 154 B.R. 339 (Bankr. N.D.Fla.1993); *In re Coones Ranch, Inc.,* 7 F.3d 740 (8th Cir.1993); *In re R. and D. Group, Inc.,* 136 B.R. 163 (Bankr.S.D.Ohio 1992); *In re Seaspire, Inc.,* 56 B.R. 159 (Bankr.M.D.Fla.1985). Bankruptcy Rule 9011 and FRCP 11 (collectively "Rule 11") are analogous. Therefore, authorities construing FRCP 11 are applicable in a Bankruptcy Rule 9011 motion. *In re Alberto,* 119 B.R. 985 (Bankr.N.D.Ill.1990). *But see, Marsch v. Marsch,* 36 F.3d 825 (9th Cir. 1994).

 The purpose of Rule 11 is to deter litigation abuse and unnecessary filings. *Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co.,* 112 F.R.D. 355

(S.D.N.Y.1986). *See also, A Uniform Approach to Rule 11 Sanctions,* 97 Yale Law Journal 901 (1988). If a court determines that Rule 11 has been violated, sanctions must be imposed. Bankruptcy Rule 9011; *Asher v. Film Ventures International, Inc.,* 89 B.R. 80 (9th Cir. BAP 1988). The kind of sanction to be imposed is within the discretion of the court. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987). Sanctions may be imposed against the individual who signed the pleading[9] or against the client represented by the signer. *Business Guides, Inc. v. Chromatic Comm. Enterprises, Inc.,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *In re 1801 Restaurant, Inc.,* 40 B.R. 455 (Bankr.D.Md.1984). If the client is knowledgeable about bankruptcy law or shared responsibility with the attorney for litigation strategy, sanctions may be imposed upon the client and attorney jointly and severally. *Caldwell v. Farris (In re Rainbow Magazine, Inc.),* 136 B.R. 545 (9th Cir. BAP 1992).

 Rule 11 contains two separate grounds for sanctions. *Robinson v. National Cash Register, Co.,* 808 F.2d 1119 (5th Cir. 1987). The first is whether the pleading is well-grounded in law and fact. *Id.* The second ground for imposition of Rule 11 sanctions is whether the pleading was filed for an improper purpose, such as harassment, delay, or increasing the expense of litigation. *Id.* As a result of the 1983 amendments to FRCP 11 and Bankruptcy Rule 9011, the established standard for imposing sanctions is an objective determination of whether a party's conduct was reasonable under the circumstances. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985). A finding of subjective bad faith is unnecessary. *Robinson v. National Cash Register, Co.,* 808 F.2d 1119 (5th Cir.1987).

---

*judicata* ). Alternatively, a finding of willfulness may be made in a subsequent case when the issue is raised in the context of whether the previous dismissal was based upon a debtor's willful conduct and, thus, renders the debtor ineligible under § 109(g) to proceed in that case. *Montgomery v. Ryan,* 37 F.3d 413 (8th Cir.1994).

**9.** *See, Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), in which the Supreme Court held that Rule 11 authorizes the imposition of a sanction only against the individual attorney who signed the pleading and not against that individual's law firm.

The duty of reasonable inquiry imposed upon an attorney by Rule 11 and by virtue of the attorney's status as an officer of the court owing a duty to the integrity of the system requires that the attorney (1) explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure of all information required of a debtor; (3) check the debtor's responses in the petition and Schedules to assure they are internally and externally consistent; (4) demand of the debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor. *In re Matthews*, 154 B.R. 673 (Bankr.W.D.Tex.1993); *In re Huerta*, 137 B.R. 356 (Bankr.C.D.Cal. 1992). *See also, In re Dalton*, 95 B.R. 857 (Bankr.M.D.Ga.), *aff'd*, 101 B.R. 820 (M.D.Ga.1989); *In re Rainwater*, 100 B.R. 615 (Bankr.M.D.Ga.1989).

In the instant case, Debtor is an attorney who had filed four prior Chapter 13 cases. He also appears in this court as an attorney on behalf of other debtors. The duties and obligations of a debtor in a Chapter 13 case are or should have been well known after the first case. Nevertheless, in this case and the prior (fourth) case, he included only one creditor on his mailing matrix, failed to file Schedules and a plan, failed to appear for the § 341(a) Meeting and failed to make any payments to the Chapter 13 Trustee. Debtor filed this bankruptcy petition for the improper purpose of thwarting a creditor's attempts to exercise its legitimate rights and without an intent to reorganize.

Debtor's attorney is an experienced bankruptcy attorney who represented Debtor in a prior case (the third). Therefore, Debtor's attorney knew or should have known of Debtor's prior filing. Nevertheless, the third case, the case in which Debtor's attorney had represented Debtor, was not disclosed as required in the petition filed in this case. The logical inference is that neither Debtor nor Debtor's attorney desired to call attention to the case previously dismissed "with prejudice."

Both Debtor and Debtor's attorney have failed to be completely candid with this court. For example, Debtor's student loans were listed in Schedules filed as early as Debtor's first bankruptcy petition in 1990, but were not included even on the mailing matrix in this case. Debtor's attorney offered no explanation regarding his failure to investigate those student loans before the hearing on this motion. More damaging, however, is the fact that Debtor's attorney represented Debtor in the third case, in which Schedules were filed and Debtor's attorney had ample opportunity to investigate the student loans. As a result, he should have been sufficiently familiar with the student loans to ascertain reasonably quickly that no grounds existed to claim that the loans were dischargeable. In any event, omission of the student loans and the child support arrearage from the mailing matrix is, in this case, unjustifiable.

The representations made to the court by Debtor's attorney in defense of the sanctions motion were inaccurate and misleading. The court directed Debtor's attorney to provide complete and correct information which should have been included in the Schedules. The information provided in the Report and Amendment, however, was incomplete and fallacious. Erring in favor of *more* rather than *less* disclosure would have been more persuasive of Debtor's good faith and of the fulfillment of the duties of Debtor's attorney to the court and the legal system.

Awareness of the prior cases filed by Debtor should have prompted Debtor's attorney to engage in a thorough and conscientious pre-filing investigation. *In re Huerta*, 137 B.R. 356 (Bankr.C.D.Cal.1992). In the instant case, the additional factors of the prior case having been so recently dismissed and having been so obviously not prosecuted by Debtor imposed an even greater duty of inquiry upon Debtor's attorney. Also, because the third case resulted in a § 109(g) dismissal, Debtor's attorney, as an experienced bankruptcy attorney, should have erred in favor of a complete and thorough

investigation, rather than none, in filing the fifth case.

Placing a burden of pre-filing investigation upon a debtor's attorney is not onerous. This court's computerized docketing system, operational since September, 1991, is accessible on computer terminals available in the public area in the Clerk's office and by telephone either orally or electronically (by modem to a computer). Either procedure would have quickly provided Debtor's attorney with the case numbers of three (the second, third and fourth) of the four prior cases filed by Debtor.[10] Simply viewing the dockets of those cases would have shown that they were all Chapter 13 cases and all had been dismissed. However, Debtor's attorney should have already had all the information from the first three cases as a result of his representation of Debtor in the third case. The docket for the case filed immediately prior to this case shows that no Schedules or plan were filed and that the case was dismissed—any search for a case after the third case would have been a quick docket review.

The necessity for a docket search, however, does not assume that Debtor's attorney failed to ask the most available source for such information: Debtor, his client. The search by a debtor's attorney is made necessary in an effort to confirm the information supplied by the average debtor, who may inadvertently (or, in a few instances, intentionally) provide incomplete information. In this case, Debtor, as an attorney, might reasonably be expected to provide more accurate information than the average debtor could.

▇▇▇▇ If a debtor's attorney concludes that the exigencies of imminent creditor action mandate the filing of a skeletal petition without any significant inquiry into a debtor's intent and ability to reorganize, the thorough investigation prompted by a known history of any prior filing should be undertaken *immediately* after filing a new case. If such investigation then shows the petition was improvidently filed, the debtor's attorney should immediately undertake to persuade the debtor to voluntarily dismiss the case or, if the debtor is adamant in his refusal to dismiss, the attorney may **seek** to withdraw **for cause**.[11] If counsel fails, through negligence or conscious choice, to undertake an appropriate investigation and then fails to take appropriate action if the facts show a bad faith filing, the *attorney* has committed conduct sanctionable under Rule 11. *In re Vines, Inc.*, 159 B.R. 381 (Bankr.D.Mass. 1993). Additionally, the bankruptcy courts possess the inherent powers of a federal court to regulate its own docket to ensure that its process is not being abused. *In re Khan*, 172 B.R. 613 (Bankr.D.Minn.1994) citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

▇▇▇▇ Debtors' counsel should not choose to ignore the signs and symptoms of

---

10. Prior to the third case, case dockets were manually typed. The dockets of cases filed on or after October 1, 1991, are maintained electronically. Nevertheless, all manually-typed dockets are available for inspection. In 1995, all manually-typed dockets, after microfiche recordation, should be available electronically, as well.

11. DR 2–110 provides that an attorney must withdraw if
 (1) he knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for him, merely for the purpose of harassing or maliciously injuring any person;
 (2) he knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule[.]
DR 2–110(B). DR 2–110(C) permits withdrawal if the client:

(a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law;
(b) Personally seeks to pursue an illegal course of conduct;
(c) Insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules;
(d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively;
(e) Insists, in a matter not pending before a tribunal, that the lawyer engage in conduct that is contrary to the judgment and advice of the lawyer but not prohibited under the Disciplinary Rules[.]

bad faith filings and simply allow such cases to languish on the court's dockets, secure in the knowledge that eventually, someone—usually the Chapter 13 Trustee—will move to dismiss the case. A debtor's attorney has a professional duty to the Bar, to the court and to the integrity of the legal system which is higher than the duty to the client.[12]

Ignoring the bad faith filings and neglecting to take appropriate action harms the bankruptcy system. When one or more attorneys allow one or more clients to abuse the system, the harm which devolves is not limited to the affected creditors. By example and word of mouth, the "technique" spreads until it is no longer perceived by the Bar and by debtors as an abuse but as a permissible manipulation of the system. In the meantime, respect for the bankruptcy system, including attorneys who wish to assist honest debtors, deteriorates. When public respect for any part of the legal system falters, it harms everyone involved in the system, which must rely on honest participation.

In the instant case, Debtor's attorney failed to engage in a reasonable pre-filing inquiry and, after the petition was filed, when an investigation should have been undertaken which would have made evident that Debtor's case was not feasible and probably filed in bad faith, Debtor's attorney did nothing. The presentation of Debtor's attorney in court August 1 and in the Report and the Amendment supports one of three inferences: (1) no investigation was undertaken until the Chapter 13 Trustee's motion for sanctions was filed, (2) Debtor's attorney was not candid with the court, or (3) Debtor's attorney was fully informed of the facts belatedly revealed, and chose to improperly file Debtor's case. Any one of these is sanctionable under Rule 11.

The Chapter 13 Trustee has suggested sanctions in the amount of $500, payable to the Clerk, U.S. Bankruptcy Court. No creditor has made an appearance in this case. The Chapter 13 Trustee is a salaried employee supervised by the U.S. Trustee and serves a quasi-governmental function; therefore, assessment of attorneys fees is not an appropriate sanction. The amount of sanctions should be set at a level appropriate to punish the participants and to deter future sanctionable conduct. *Colorado Chiropractic Council v. Porter Memorial Hospital,* 650 F.Supp. 231, 243 (D.Colo.1986).

In the instant case, this court finds that payment of $500 by Debtor and $500 by Debtor's attorney to the Clerk, U.S. Bankruptcy Court, is an appropriate sanction. Accordingly, it is hereby

ORDERED that sanctions in the amount of $500 each are imposed upon Debtor and Debtor's attorney. The sanctions shall be paid in good funds to the Clerk, U.S. Bankruptcy Court, 1340 United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia 30303, within 14 days of the date of entry of this order and a certificate of such payment shall be filed contemporaneously. It is further

ORDERED that this case is DISMISSED "with prejudice." Debtor is barred from refiling any petition under Title 11 of the United States Code for a period of 180 days. Jurisdiction to enforce this order is reserved.

IT IS SO ORDERED.

---

12. Enunciation of this principle is attributed to Justice Anthony Kennedy, Speaker, **"Legal and** **Judicial Ethics,"** 11th Circuit Judicial Conference, May 7, 1990, Asheville, North Carolina.