**In re Theresa BAILEY, Debtor.**

**In re Patrick Bailey, Debtor.**

**Nos. 04–36012DWS, 04–36167DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 3, 2005.

Harvey Iseman, Esquire, Philadelphia, PA, for debtors.

William C. Miller, Esquire, Philadelphia, PA, Chapter 13 Trustee.

*OPINION*

DIANE WEISS SIGMUND, Chief Judge.

Before the Court for hearing on December 21, 2004 was (1) the Motion of Washington Mutual Bank F.A. ("Bank") to Dismiss Case with Prejudice and for In Rem Relief in the Chapter 13 case of the debtor Patrick Bailey ("Mr.Bailey"); (2) the Court's Order ("Show Cause Order") dated December 3, 2004 in the Chapter 13 case of debtor Theresa Bailey ("Mrs.Bailey") to show cause why sanctions should not be granted against Mrs. Bailey and her attorney Harvey Iseman, Esquire ("Iseman") for filing a Chapter 13 petition notwithstanding a court order barring her from so doing; [1] and (3) Bank's request for sanctions in the form of reimbursement of attorneys' fees and costs against Mr. and Mrs. Bailey and Iseman.[2] An evidentiary hearing was held on a consolidated record during which Mr. and Mrs. Bailey and Iseman presented testimony. Because of the important issue presented, *i.e.,* the responsibility of a debtor's counsel as an officer of the court where a debtor has filed repeated unsuccessful Chapter 13 cases, I took the matter under advisement.[3]

**BACKGROUND**

Bank is the holder of a first mortgage granted in 1990 on residential real estate located at 1543 West Pike Street, Philadelphia, Pa. (the "Property"). At the time Mr. and Mrs. Bailey owned and lived in the Property as husband and wife. Their marriage subsequently ended, and Mr. Bailey vacated the Property in 1996 although he continues to retain an ownership interest with his former wife.

While Mrs. Bailey could not recall when mortgage payment problems began, the first bankruptcy filing, a Chapter 7 case, was made on April 28, 1994 by Mr. and Mrs. Bailey. Exhibit M–3.[4] Discharged on

---

1. That order also dismissed Mrs. Bailey's Chapter 13 case due to the extant permanent bar on her filing further bankruptcy cases.

2. At the hearing Bank's counsel amended, without objection, its request to include sanctions against Mr. Bailey who at the time of the show cause order had not yet filed his case. As both Baileys were present with joint counsel and given what was alleged to be a concerted effort on both Debtors' part to use bankruptcy cases in tandem to obstruct Bank, I allowed the amendment.

3. I postponed the imminent sheriff's sale conditioned on Mr. Bailey's making current mortgage and Trustee payments and stated my intention to address the dismissal of the Mr. Bailey case and the sanctions matter in a written opinion.

4. For easy reference, a summary of the bankruptcy cases affecting the Property follows:

| Chapter | Date Filed | Closed/Dismissed | Debtor | Lawyer |
|---------|-----------|------------------|--------|--------|
| Ch. 7 | 04/28/94 | 08/07/95 | Mr. & Mrs. | D. Offen |
| Ch. 13 | 09/28/95 | 03/26/96 | Mr. | D. Offen |
| Ch. 13 | 12/02/96 | 12/17/97 | Mrs. | E. Jensen |
| Ch. 13 | 10/03/97 | 05/21/98 | Mr. | E. Jensen |
| Ch. 13 | 08/10/98 | 10/21/99 | Mrs. | J. Croom |
| Ch. 13 | 01/31/00 | 01/13/03 | Mrs. | J. O'Connell |
| Ch. 13 | 05/02/03 | 02/12/04 | Mrs. | J. O'Connell |
| Ch. 13 | 04/12/04 | 04/13/04 | Mrs. | *pro se* |
| Ch. 13 | 12/03/04 | 12/03/04 | Mrs. | H. Iseman |
| Ch. 13 | 12/06/04 | 01/26/05 | Mr. | H. Iseman |

Exhibit M–3. I shall take judicial notice of the docket entries and orders entered in these

August 7, 1995, Mr. Bailey was back to the bankruptcy court without his wife on September 28, 1995 in a Chapter 13 case which was subsequently dismissed and closed on March 26, 1996. The third case affecting the Property was filed solely by Mrs. Bailey on December 2, 1996 under Chapter 13 and dismissed and closed on December 17, 1997. Case number four was filed by Mr. Bailey under Chapter 13 on October 3, 1997 during the pendency of Mrs. Bailey's case and dismissed and closed on May 21, 1998. *Id.*[5] On August 10, 1998, Mrs. Bailey filed case number five with a third bankruptcy lawyer, the prior two lawyers having filed two cases apiece. That Chapter 13 case was dismissed on October 21, 1999 on the Chapter 13 trustee's motion. On January 31, 2000, case number six was filed by Mrs. Bailey with a fourth bankruptcy lawyer. After four motions to dismiss for failure to make plan payments in that case alone, the Chapter 13 case was dismissed on January 13, 2003. Not deterred, that lawyer filed a seventh case, 03–16715, for Mrs. Bailey on May 2, 2003. That filing was greeted by an immediate motion for relief by Bank which was settled by stipulation on July 8, 2003 only to be followed by a certificate of default on September 29, 2003. The relief granted upon the certification of default was supplemented on November 20, 2003

by the first 180 day bar against refiling imposed on Mrs. Bailey ("First Bar Order"). That case was dismissed on February 12, 2004 on a Trustee's motion. *Id.*[6]

During the pendency of the First Bar Order, Mrs. Bailey filed a Chapter 13 petition *pro se* on April 12, 2004. That petition was promptly dismissed by Order dated April 13, 2004 (the "Second Bar Order") which further provided that "Debtor, Theresa Bailey is prohibited from filing any future Bankruptcy Petition in this U.S. Bankruptcy Court without the Debtor securing the express permission and leave of this Court. Any future violations of the Court's bar order will result in sanctions as a civil contempt."

Mrs. Bailey testified that she was unaware of the First Bar Order although court records reflect service on her at the Property. BNC Certificate of Mailing, Doc. No. 29, Case No. 03–16715. She also denies filing the *pro se* petition that violated the First Bar Order and claims not to have had any knowledge of that case. She asserts that the signatures on the bankruptcy papers are not hers although she did not introduce any document that supported that contention, including most specifically a handwriting exemplar.[7] She did not speculate on who would have filed the case that enabled her once again to stay an imminent sheriff sale but rather argued

cases. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi,* 1993 WL 69146, at *2 (N.D.Ill. 1993); *In re Paolino,* 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); *see generally In re Indian Palms Associates, Ltd.,* 61 F.3d 197 (3d Cir.1995).

5. Full dockets were not presented for these older cases so I cannot discern when the petitions were dismissed or whether relief from stay, the likely impetus to Mrs. Bailey's filing, was granted in Mr. Bailey's case.

6. This order, which was unopposed, was based on the serial filings made by Debtor and Mr. Bailey to obstruct Bank's exercise of its state law remedies. Bank had scheduled nine sheriff sales since default of the mortgage in 1996 only to have each sale stayed by a bankruptcy filing.

7. Nor would I necessarily conclude that her failure to sign the petition establishes her lack of knowledge or authorization of the filing. According to the papers that were filed, she was assisted by Daniel Rey Delivery Service, a "friend." No one asked Mrs. Bailey if she knew a Daniel Rey or his delivery service.

that she could not have had any notice of the proceedings because the petition mailing address is a P.O. Box in Quakertown. The flaw in that contention is that the Second Bar Order was mailed to the Property address not to the P.O. Box. *See* Exhibit M–2 (certificate of service of Bankruptcy Noticing Center with respect to April 13, 2004 Order). Notably neither she nor her counsel made the connection between that P.O. Box and Creative Real Estate Solutions LLC with whom Mrs. Bailey was working to deal with her mortgage situation at the time. The P.O. Box on the petition and the P.O. Box on Creative's business card are the same. *See* n. 9 *infra.*

On November 29, 2004, with a sheriff sale scheduled for December 7th, Mrs. Bailey met Iseman, the fifth lawyer to facilitate the Baileys' desire to stay Bank's exercise of its state law remedies upon default, and he agreed to file a Chapter 13 case on her behalf. He inquired about her bankruptcy history and was advised of only one prior case, 03–16715, which he identified on the petition. Utilizing PACER,[8] he searched the docket of that case and learned of the First Bar Order entered on November 20, 2003 but concluded that it had expired so a new filing was not prohibited. He did not think it necessary to and thus did not make a further electronic inquiry of PACER records to ascertain whether there were other cases or other orders relevant to a new filing by Mrs. Bailey. Rather on December 3, 2005, he filed the ninth bankruptcy case affecting the Property, and thereafter notified Bank's counsel, presumably to stop the December 7th sheriff sale. In response, he was informed by Bank's counsel of the Second Bar Order and the long bankruptcy history of the Baileys.

Not unexpectedly, the case was immediately dismissed and given the extant Second Bar Order which expressly stated that "any future violations of this Court's bar order will result in sanctions as a civil contempt," the Show Cause Order was contemporaneously entered. However, with the sheriff sale once again threatening the Property, Iseman then filed a new case on behalf of Mr. Bailey, successfully staying the sheriff sale yet again.

At the show cause hearing, Iseman sought to justify his actions with regard to Mrs. Bailey's filing by his ignorance of the Second Bar Order and all but the one case she disclosed to him. Bank's counsel argued that even if that did excuse Iseman's conduct, his subsequent action once he was made aware of the entire bankruptcy history for the Property could not be so readily dismissed. Bank contended that the fact that Iseman did an end run around Mrs. Bailey's dismissal by filing on Mr. Bailey's behalf to stay the sheriff sale required sanctions against him as well as dismissal of Mr. Bailey's case which it viewed to be filed in bad faith.

To counter the allegation of bad faith, Iseman elicited the testimony of Mr. and Mrs. Bailey that there was a change in circumstance since the prior unsuccessful case. Mr. Bailey testified that he was now willing to undertake responsibility for paying the mortgage arrears out of a sense of duty to his former wife and children. Since he no longer had to pay child support of $192 monthly and contemplated getting additional funds from his mother and Mrs. Bailey, he claimed to have more disposable income. Moreover, as Mr. Bailey had not been in bankruptcy since 1998, Iseman argued that those old cases should not be counted against him.

---

**8.** PACER, an acronym for Public Access to Court Electronic Records, makes court dockets and the related pleadings available to the public through the internet.

Iseman also elicited the testimony of Mrs. Bailey that notwithstanding her failure to make her monthly mortgage payments of $432 to Bank since at least January 2003, she had been making payments from May 2003 to November 2003 to Creative Real Estate Solutions LLC ("Creative"). According to Mrs. Bailey, when her then current bankruptcy case was dismissed, a friend introduced her to Kristen Dominguez ("Dominguez") who told her not to pay a trustee as it would entail too much money but rather told her to sign some papers and make payments to Creative which would forward them to the Bank. Mrs. Bailey produced seven money orders in varying amounts ·aggregating $3,159 made payable to Creative (payment of $600 on 8/27/03, $300 on 9/20/03, $300 on 9/27/03, $600 on 10/25/03) and "Avagon LLC" (payment of $453 on 8/31/04) and "Your Home, LLC" (payments of $453 each on 10/1/04 and 11/12/04). She contends that she also gave cash to Dominguez although she did not specify when or how much. Mrs. Bailey testified that she thought everything was fine with her mortgage until the sheriff sale was scheduled for January 4, 2005, and she learned she was in default.

While I am not clear as to the relevance of this information to the pending sanctions matters, I do note that Mrs. Bailey produced none of the papers she signed[9] nor explained the relationship of Your Home, LLC and Avagon LLC to Creative or Dominguez and why the payments were made to them and no longer to Creative and for a different amount. Since her monthly mortgage payment is $432, I do not understand how nor was she asked to explain why she would conclude that a $600 current monthly payment, let alone a $453 current payment, would keep her mortgage current and remedy her default with Bank so as to prevent a foreclosure action given the existence of substantial arrears under the mortgage that had prompted the serial bankruptcy filings to stay such sales. Indeed there was a striking absence of information about these transactions and no investigation by her counsel as to what he and Mrs. Bailey described as a scam. While I acknowledge that Mrs. Bailey is not a sophisticated person and perhaps she did pay good money to an unscrupulous person, she did so with the knowledge that she was not doing what had been required in multiple bankruptcy cases to stay foreclosure by Bank— pay the Bank mortgage currently and the arrears to the Trustee over the life of her Chapter 13 plan.[10]

Given the ever present tension between an attorney's zealous representation of a client and his obligation as an officer of this court, the extent of Iseman's personal responsibility for the bankruptcy abuse arising from the Bailey cases is an important matter not only to him but to all attorneys practicing in this court. While I have expressed my views in open court on such matters, I concluded that rather than rule from the bench in this case, I would

9. The only record of this relationship produced was Dominguez' business card which describes Creative as "Cash for Your House" and "We Buy, Sell and Lease Houses." The business card contains no address but rather a P.O. Box 871 in Quakertown, Pennsylvania. This P.O. Box also appears as the mailing address on her 2004 petition, a fact that she and her counsel apparently failed to recognize and therefore point out.

10. While I am not unsympathetic to Mrs. Bailey's allegations of fraud, her remedy is to pursue Dominquez or the entities which received her payments. Unfortunately the failure of this dubious non-bankruptcy strategy does nothing to mitigate my conclusion that the return to this forum for the ninth and tenth time was an abuse of the bankruptcy system.

set forth my reasoning in a written opinion which would provide guidance to attorneys in handling cases where the debtors are bankruptcy recidivists. *In re Brown*, 2002 WL 368443, at *1 (Bankr.D.S.C. Jan.31, 2002) (order serves as public notice to bankruptcy bar that court considers fulfillment of duties an important matter and will impose sanctions if neglected). Because the sheriff's sale of the Property was imminent, I could not do so in a timely manner. Accordingly, I entered a bench order staying the sale for one month, *i.e.*, to early February on the condition that Mr. Bailey make the December mortgage payment and Trustee payment. In response, Iseman surprisingly advised me that Mr. Bailey had no available funds and apparently no financial assistance from either Mrs. Bailey or his mother in order to comply with this condition. This situation belied Iseman's argument to me that an increase in Mr. Bailey's disposable income by reason of the cessation of child support provided the change in circumstance to justify the new case. Rather I now learned that Mr. Bailey simply had no money until he received his next paycheck on December 24th, a fact that Iseman had apparently not bothered to discover until I required a payment and he questioned his client in open court. Seeing no prejudice to Bank to wait the extra days, I ordered those payments be made by December 27 and January 18, respectively, and the January 15th mortgage payment to be made currently or I would enter an order dismissing the case with a permanent bar upon the filing of a certification of default.

■ On January 25, 2004, Bank filed such a certificate of default stating that Mr. Bailey had failed to make the January mortgage payment as ordered, and that Iseman advised Bank's counsel on January 19th that Debtor could not afford to make the payment or afford the bankruptcy case, and realized that it would be dismissed and the Property sold at the February sale. As a result and as contemplated by the December 21, 2004 hearing and Order, I entered an Order on January 26, 2005 dismissing Mr. Bailey's case with a bar as to his and Mrs. Bailey's filing any future bankruptcy petitions with respect to the Property and retained jurisdiction to adjudicate the sanctions issue.[11]

## DISCUSSION

### I.

■ Bankruptcy Rule 9011[12] governs the signing and verification of papers filed with the bankruptcy court and provides for the imposition of sanctions for its violation.[13] "By signing a pleading, motion or

---

11. Dismissal of the main case does not deprive this court of jurisdiction over the pending sanctions issue. *In re Slaughter*, 191 B.R. 135, 138 (Bankr.W.D.Wis.1995) (citing cases).

12. Fed. R. Bankr.P. 9011 states, in part, that the signature of an attorney "constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of an existing law; and it is not interposed for any improper purpose, such as to harass or to cause undue delay or needless increase in the cost of litigation or administration of the case."

Bankruptcy Rule 9011 and Federal Rule Civil Procedure 11 impose the same duties and thus it is not uncommon for bankruptcy courts to rely on Rule 11 cases for guidance. *See, e.g., Slaughter*, 191 B.R. at 138.

13. In this age of electronic filing of documents, the attorney's log-in and password to the Electronic Filing System constitute the signature on all documents, including for purposes of Rule 9011, the other Federal Rules of Bankruptcy Procedure and the local rules of court. It also serves as a certification that the

other document, an attorney or litigant certifies that he has 'conducted a reasonable inquiry into the facts which support the document.'" *In re Weaver*, 307 B.R. 834, 841 (Bankr.S.D.Miss.2002) (*quoting Childs v. State Farm Mutual Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir.1994)). Bankruptcy Rule 9011 contains two separate grounds for the imposition of sanctions: (1) whether the filed pleading is well grounded in fact or warranted by existing law or by a good faith argument for its modification, where a reasonable inquiry would have revealed the deficiency; and (2) whether the pleading was filed for any improper purpose, such as to harass, delay or needlessly increase the expense of litigation.

▆▆▆ An objective standard is applied by the court to determine if the party's actions were reasonable. *In re Geller*, 96 B.R. 564, 567 (Bankr.E.D.Pa.1989) (*citing Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 194 (3rd Cir. 1988)). The subjective good faith belief of an attorney is no defense under the Rule. The reasonableness of an attorney's inquiry focuses not on whether the claim was frivolous or not but whether the attorney conducted an adequate inquiry into the facts and law before filing it. *Slaughter*, 191 B.R. at 140. If the court determines that a violation of the rule has occurred, sanctions are mandatory. Fed. R. Bankr.P. 9011(a).

▆▆▆ Federal courts also have the inherent power to impose sanctions under appropriate circumstances. *Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). This power is exercised in the bankruptcy court pursuant to § 105(a) which authorizes the issuance of any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. Where there is sufficient evidence to find an abuse of the judicial system, sanctions may be awarded without regard to the signed document requirement of Rule 9011. *In re Mergenthaler*, 144 B.R. 632, 635 (Bankr.E.D.N.Y.1992) (*citing United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)). However, an explicit finding of bad faith or willful misconduct is required in that instance. *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1225 (3d Cir.1995). *See also Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir.2003).

## II.

The actions that are at issue in this sanctions hearing are (A) with respect to Mrs. Bailey, (1) the statement in the petition Iseman filed on her behalf that only one prior case had been filed by her and (2) the filing of that petition notwithstanding the extant Second Bar Order in the undisclosed case; and (B) with respect to Mr. Bailey, the filing of Mr. Bailey's petition on the coattails of Mrs. Bailey's dismissed case to stay the same sheriff sale. Additionally I will consider whether, without regard to these extenuating circumstances, the two filings in and of themselves were violations of Rule 9011 when they were the ninth and tenth bankruptcy petitions to stay acts with regard to the Property.[14]

### A.

▆▆▆ The petition Iseman filed for Mrs. Bailey identifies only one prior bankruptcy

---

attorney has received a copy of the original document containing signatures of all parties to the document. Exhibit A, ¶ 8 to Standing Order M–03–3005 dated April 15, 2003.

**14.** The bankruptcy history is summarized at n. 4 *supra*.

filing in the last six years, *i.e.,* case number 03–16715, when there were actually three filed during that period, including one prior to the disclosed case and one thereafter in which a bar order was entered prohibiting future filings. The petition signed and filed by Mrs. Bailey which failed to disclose her prior cases and ignored the bar order violated Rule 9011.

■ In response to the Show Cause Order, Iseman stated with respect to his own culpability, that Mrs. Bailey did not disclose her other cases but only informed him of case no. 03–16715 which he investigated through a PACER search of the court docket, discovering the First Bar Order. Finding it had expired on May 20, 2004, he saw no obstacle to the filing of a new petition on December 3, 2004. He asked Mrs. Bailey if she had filed any subsequent petition and when she responded no, his inquiry of her history ended notwithstanding his awareness of the First Bar Order. He insisted that he had fulfilled his obligation by his questioning of Mrs. Bailey and that he had acted properly in relying on the information she gave him without further investigation.

■ I could not disagree more with this troublesome position. The problem of serial filing of Chapter 13 cases is epidemic in no small part because of lawyers who will take any case at the request of a debtor about to lose his or her house to a sheriff's sale. Cases are filed without any investigation of the bona fides of the bankruptcy reorganization. Admittedly clients appear on the doorstep at the 11th hour and the exigency of the circumstance often precludes more than a cursory review of the debtor's financial situation. However, as a result of the advent of electronic documents, a few clicks of the mouse enable an attorney to discover that client's bankruptcy history. Given the requirement that the petition identify all cases

filed within the last six years by location, case number and date filed, I believe a PACER search should be done by every lawyer prior to filing a petition with this court. Where the client identifies a prior case, and in particular where a review of the docket in that case discloses a bar order, failure to further investigate the client's bankruptcy history, is inexcusable. A bar order is entered only where there have been prior filings and usually more than two.

A review of the docket in case no. 03–16715 told Iseman that Mrs. Bailey had a bankruptcy history. Awareness of the prior case and bar order required Iseman to engage in a thorough pre-filing investigation and not to rely on what his client told him, especially when the information was so easily attainable. *In re Weaver,* 307 B.R. 834, 844 (Bankr.S.D.Miss.2002) (reliance on debtors' written questionnaire, documents they provided and their personal interview, as well as inquiry of prior counsel and verification through court voice automated system that prior case was dismissed was not reasonable inquiry given the other methods of determining prior bankruptcy cases that are not time consuming and easily provide access to information); *In re Armwood,* 175 B.R. 779, 789 (Bankr.N.D.Ga.1994) (awareness of the prior case should have prompted debtor's counsel to engage in a thorough and conscientious pre-filing investigation); *In re Bono,* 70 B.R. 339, 344 (Bankr. E.D.N.Y.1987) (while debtor had disclosed only one prior case, attorney not entitled to rest on what client told him when sources were available to corroborate the client's version). Had Iseman continued his electronic search for a few more minutes, he would have easily discovered eight prior cases and the Second Bar Order. That was the reasonable inquiry required

by Rule 9011 before he filed the petition for Mrs. Bailey.

When Iseman joined Mrs. Bailey in signing her Chapter 13 petition, he certified that she was eligible to file, had disclosed her prior cases and was entitled to the benefits of the federal bankruptcy laws. *Bono,* 70 B.R. at 344. His failure to identify the prior cases on the petition he filed and his filing of the prohibited petition itself, which would have been apparent had he undertaken a reasonable inquiry, violated Rule 9011.

The duty of reasonable inquiry is imposed upon an attorney not only by Rule 9011 but also by the attorney's position as an officer of the court with a responsibility to maintain the integrity of the bankruptcy system. *Armwood,* 175 B.R. at 789. Although Iseman clearly failed the court in his handling of this case, had the foregoing been Iseman's only missteps, no harm would have come to Bank since Mrs. Bailey's bankruptcy case was dismissed before the date of the sheriff sale. Had he taken no further action, the prejudice that the Second Bar Order sought to prevent would not have occurred. As it turns out, he did take further action and Bank was injured, and for that I must turn to the second and more egregious Rule 9011 violation committed by Iseman and Mr. Bailey.

### B.

 With the sheriff sale of the Property still pending, Iseman now met with Mr. Bailey. While the record does not establish whether Mrs. Bailey or Iseman had the idea that Mr. Bailey, who had not provided financial support in any of Mrs. Bailey's prior cases, should file a new case, it is clear that Mr. Bailey only sought bankruptcy protection because it would stop the imminent foreclosure of the Property which he continues to own with Mrs. Bailey. According to his testimony, he wanted to save the house in which his children resided. Thus, I conclude that Mr. Bailey had no intention to reorganize his financial affairs but rather became the designated petitioner to circumvent the bar imposed against Mrs. Bailey.

 At the time that Iseman met with Mr. Bailey, he had become aware of the prior cases and the many sheriff sales aborted by bankruptcy filings of Mrs. and Mr. Bailey. Iseman dismissed the prior cases of Mr. Bailey as irrelevant because they were filed so long ago and apparently because he considers the filings by related parties to be independent of each other. However, it is the well established view of this and other courts that the actions of one family member in filing a bankruptcy petitions for the purpose of staying foreclosure of the same property may be imputed to another family member due to a unity of interest and concert of action. *In re Norley,* 2002 WL 1752280, at *4 (Bankr. E.D. Pa. June 24, 2002) (discussing with approval *In re Kinney,* 51 B.R. 840 (Bankr.C.D.Cal.1985)).[15] Moreover, Iseman knew that Mr. Bailey had not lived in the Property since those earlier cases were filed and had long ago left the protection of the Property to Mrs. Bailey who responded, as he had before, by filing

---

**15.** Had Iseman been aware of my decision and frequent bench rulings to this effect as well as the views of other judges similarly holding, I assume he would not have acted upon and then pressed a position that has been so soundly rejected. However, it should have been apparent to him, without even reading the cases, that this kind of "cat and mouse" game with family members trading off petitions to evade bar orders is an abuse, and as such, that he had a responsibility as a member of the bar and an officer of this Court not to suggest it or facilitate it. *See In re Bystrek,* 17 B.R. 894, 895 (Bankr.E.D.Pa. 1982)

bankruptcy case after bankruptcy case. Iseman's contention that Mr. Bailey's financial resources were now available to support a tenth bankruptcy case for the Property must be considered in light of this knowledge. The bankruptcy petition was a certification by Mr. Bailey and Iseman that Mr. Bailey was entitled to the benefits of Chapter 13, and its filing without a bona fide change of circumstance is a violation of Rule 9011. As Mr. Bailey's new "commitment" to the family arose only when Mrs. Bailey was barred from again protecting the Property in bankruptcy, the purported change of circumstance advanced by Iseman is, without more, rather suspect.

The inquiry that Iseman conducted of his "new client" does nothing to controvert that conclusion, and indeed I find that it was unreasonable under the circumstances to justify his filing the petition. According to Iseman, he ascertained the Bank's arrears and calculated a plan payment which Mr. Bailey said he could make along with the current mortgage on the Property. As was the case with Mrs. Bailey, Iseman relied on the self serving representation of his client. Iseman took no steps to discover Mr. Bailey's financial ability to propose a confirmable plan before he filed the petition other than to pose a question that admitted of only one answer. At the hearing, Mr. Bailey testified to this conclusion but was vague and contradictory about the specifics. His Schedule I statement of income included "assistance" from his mother that he was unable to explain. His Schedule J showed that the Bank's current mortgage payment was not even in his budget.[16] The preparation of Mr. Bailey's Schedules should have demonstrated to

Mr. Bailey as well as to Iseman that this newest case suffered from the same fatal flaws as the prior ones. Had Iseman gathered accurate information before the filing, he would have seen that this case was legally unsupportable as well. Of course, the exigency of Mr. Bailey filing as a last minute substitute for Mrs. Bailey did not give much time for that exercise. Nonetheless even with the passage of time and the opportunity to discover Mr. Bailey's misrepresentation about his ability to perform under Chapter 13, Iseman continued to oppose the Bank's dismissal motion, arguing that there was a change of circumstance and that Mr. Bailey would be able to do what had not been done in nine prior cases. *Armwood,* 175 B.R. at 788 (Rule 11 and attorney's status as officer of the court requires that attorney seek relief from the court in the event that he may have been misled by the debtor).

Of course, as has now been demonstrated, Mr. Bailey could do nothing of the kind. He had no available funds to make the December overdue payment to Bank on December 21st when the Bank's motion was heard. Iseman should have known that a new petition could not be sustained when the first payments could not be made when due. He either had not inquired of his client or the inquiry he made generated an answer adverse to the cause. While Mr. Bailey did make the December 24th payment to the Bank, he failed to make the January mortgage payment and never made one payment to the Chapter 13 trustee in this case. Rather, after the fact, he acknowledged that he could not afford the plan that Iseman filed on his behalf but, of course, his petition had already stayed the December sheriff sale.

---

16. To my question as to whether the mortgage was listed, Iseman responded that I was not looking at the amended schedule which did list it. On further inquiry and examination, he admitted he was incorrect as there was no amended schedule and no listing of the mortgage obligation.

 Lest too much be read into these comments, I stress that an attorney is not an insurer of the accuracy of his client's financial information. However, when the petition to be filed represents a tenth automatic injunction on the exercise of a creditor's state law rights, an attorney has a heightened duty of inquiry. Since the filing of a petition after such a succession of unsuccessful cases is an extraordinary privilege, it is incumbent on counsel to satisfy himself that it is proposed in good faith, *i.e.*, for a valid bankruptcy purpose and not merely to stay a sale. All benefit of doubt normally accorded the debtor should be replaced by a healthy skepticism, and the client should be required to prove his ability to perform before the case is filed.[17] The fact that the client comes to the court on the eve of a sale should be a red flag that the request for bankruptcy relief is not motivated by a change of circumstance but rather the pending sale.

There are courts that have held that multiple filings in and of themselves are a basis for Rule 9011 sanctions. *Geller,* 96 B.R. at 568 (citing cases). I admit to having a difficult time conceiving of a circumstance where a tenth filing is not an abuse of the bankruptcy system that should be recognized as such by an attorney.[18] However, I see no need in this case to sanction Mr. Bailey or Iseman on this basis since without regard to whether a tenth filing should ever be made, this one clearly should not have been. I find that even if Mr. Bailey's motives were pure in giving support to his former wife's efforts to retain the Property, he abused the bankruptcy law in filing a tenth case for the sole purpose of staying foreclosure. *In re Barnes,* 231 B.R. 482 (E.D.N.Y. 1999).[19] I find that Iseman with the

17. Before initiating a tenth filing, Iseman could have required the December mortgage and Trustee payments to be placed into escrow with him and secured his client's consent to a wage order and financial contribution affidavits from the mother and Mrs. Bailey identifying the extent of their assistance. Of course, had he done so, he would have learned what Mr. Bailey admitted only after the petition was filed and the foreclosure aborted, *i.e.,* that he could not afford the bankruptcy.

18. Part of the problem with serial filings emanates from lawyers who find that the "solution" to a debtor's inability to perform a Chapter 13 plan is to allow the case to be dismissed and simply file another one. Reviewing the bankruptcy history here, a total of five lawyers filed cases on behalf of the Baileys managing to stave off their mortgage foreclosure for ten years through successive cases but no reorganization. They provided the debtor at best with a false sense of security and at worst a lack of respect for the integrity of the bankruptcy process. The house is lost sooner or later because with every filing, the claim escalates. No legitimate bankruptcy objective is accomplished by these efforts although presumably the lawyers derive a fee from their illusory services.

19. Noting that the Chapter 13 bankruptcy filing by Barnes was clearly an effort to retain this property, the court quoted *In re Peia,* 204 B.R. 310, 315 (Bankr.D.Conn.1996), which stated:

> "the automatic stay ... was not intended to be used as a weapon or club to reduce secured creditors into submission with the continued passage of time.... The automatic stay was not intended to be a permanent refuge for a financially distressed debtor."

As the Third Circuit Court of Appeals recently stated in the context of a Chapter 11 case but equally applicable here, the provisions of the Bankruptcy Code, such as the automatic stay, are to be invoked only after a case has been filed with a legitimate bankruptcy purpose. *NMSBPCSLDHB v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.),* 384 F.3d 108, 127 (3d Cir.2004). The automatic stay is not the *raison d'etre* for a filing and the desire to take advantage of it alone is not a valid justification for filing a bankruptcy case. Rather it is a consequential benefit of an otherwise good faith filing. This

knowledge of the Bailey bankruptcy history simply did not make a reasonable inquiry to ascertain that there was a valid bankruptcy purpose for this case. Had he done so, he would have concluded that there was none and as such his filing the petition violated the first ground of Rule 9011. Moreover, I conclude that the filing of this case to circumvent the bar imposed on Mrs. Bailey in order to stay the imminent sheriff's sale was an improper purpose, *i.e.,* to obstruct the Bank's exercise of its valid state law remedies, and as such constituted a violation by Mr. Bailey and Iseman of the second ground of Rule 9011.[20]

## C.

 Having concluded that Mr. and Mrs. Bailey and Iseman have violated Rule 9011, sanctions are mandatory. *Slaughter,* 191 B.R. at 141 (citing cases). The kind of sanction imposed is within the discretion of the judge. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987). Sanctions may be monetary or non-monetary. If monetary sanctions are awarded, the court should consider what amount is needed to deter that responsible person, given his financial resources, from repetition of similar activity. The award must be caused by the violation and must be reasonable. The reasonableness finding reflects consideration of Rule 9011's goals of deterrence, punishment and compensation. As such, a determination of the extent to which the nonviolating party's expenses and fees could have been avoided is necessary. *Weaver,* 307 B.R. at 847.

Sanctions under Rule 9011 are often designed to make the adverse party whole, *i.e.,* in the same position it would have been in had the violating conduct never occurred. *Slaughter,* 191 B.R. at 142. That is the premise upon which Bank seeks sanctions here, requesting its legal expense of $1,650 for filing and prosecuting the Motion to Dismiss in Mr. Bailey's case. Recognizing that Bank has sought sanctions against both Mr. and Mrs. Bailey and Iseman, Bank's counsel recommended an allocation of $1,000 against Iseman and $650 against the Baileys.

 Where a sanction is sought, it is reasonable to allocate the award between the attorney and client according to their respective responsibility. Where the harm results from the client's failure to disclose information, the client should bear the brunt of the sanction. When the culpability is shared, as here, courts can impose joint and several liability. *In re Pasko,* 97 B.R. 913, 918 (Bankr.N.D.Ill.1988). I find both a monetary and non-monetary sanction appropriate in this case.

 With respect to the first Rule 9011 violation committed by Iseman in Mrs. Bailey's case, I will order Iseman to conduct a PACER search of every potential debtor's bankruptcy history prior to filing any new bankruptcy petition. His filing of a petition is a certification that he has done so. Failure to discover and disclose in the bankruptcy petition prior filings will be a contempt of this Court's Order.

---

truism is lost on many serial filers and their counsel.

**20.** I am unpersuaded by Iseman's arguments that Mr. Bailey was free to file because I had declined a bar against him requested by Bank in an earlier case of Mrs. Bailey. He reached this unwarranted conclusion by noting the deletion in the proposed order as

entered without any inquiry as to why the deletion was made. As I stated to Iseman, the deletion was not an invitation to file but a function of my concern about notice on Mr. Bailey. Iseman still had the obligation to ascertain whether Mr. Bailey's filing on the heels of Mrs. Bailey's dismissal was in good faith.

■ With respect to the second Rule 9011 violation committed by Mr. and Mrs. Bailey and Iseman in filing Mr. Bailey's case to circumvent Mrs. Bailey's bar order, I will accept the recommended allocation of the damages sought by Bank. I find the award of $1,650 allocable $1,000 to Iseman and $650 jointly and severally to Mr. and Mrs. Bailey reasonable, particularly because the further delay caused by the filing had a cost to Bank for which it does not seek recompense. The allocation which is weighted more heavily toward Iseman is appropriate given the respective resources of the parties and the heightened responsibility he bears for the bankruptcy abuse. Too often Debtors are emboldened to file petition after petition because, as here, members of the bar have been willing to do so for them, thereby signaling to them that this strategy is appropriate. Such strategy, however, is not appropriate as counsel knows or should know. The specter of sanctions is intended to chill this type of bankruptcy advice and make these cases an unprofitable source of business.

An Order consistent with this Opinion shall be entered.

### ORDER

AND NOW, this 3rd day of March 2005, following a hearing in connection with (1) the Court's Order dated December 3, 2004 in the Chapter 13 case of debtor Theresa Bailey ("Mrs.Bailey") to show cause why sanctions should not be granted against Mrs. Bailey and her attorney Harvey Iseman, Esquire ("Iseman") for filing a Chapter 13 petition notwithstanding a court order barring her from so doing and (2) Bank's request for sanctions in the form of reimbursement of attorneys' fees and costs against Mr. and Mrs. Bailey and Iseman;

And for the reasons stated in the foregoing Opinion, it is hereby **ORDERED** that:

1. Prior to filing any new bankruptcy petition, Iseman shall conduct a PACER search of a potential debtor's complete bankruptcy history, reviewing not only the dockets but the orders and stipulations entered therein that are relevant to the individual's ability to refile a case in good faith. Iseman's filing of a petition is a certification that he has made this inquiry. Failure to discover and disclose in the bankruptcy petition prior filings of record will be a contempt of this Court's Order subject to the entry of further sanctions.

2. Monetary sanctions are awarded in favor of Bank in the amount of $1,000 against Iseman, and $650 jointly and severally against Mr. and Mrs. Bailey.